CHAPMAN *v.* LOTT *et ux.**

(Division B. Jan. 3, 1927.)

[110 So. 793.  No. 26060.]

1. DEEDS. *It is enough that grantor delivers deed for record, and that it is afterwards kept in family papers, grantee being his wife.*

It is not necessary that grantor make formal manual delivery of deed to grantee, but enough that he delivers it for record, and that thereafter it is kept in the family papers of himself and grantee, his wife.

2. VENDOR AND PURCHASER. *Option or offer must be accepted as made.*

Acceptance must be of offer made, so offer of husband to sell cannot be accepted as an offer of the wife, the real and record owner, to sell.

3. HUSBAND AND WIFE. *Insufficient acceptance of husband's offer as one of wife held not treated as sufficient by placing, by mistake, to husband's credit check to wife.*

Where offer is by husband to sell, acceptance as of offer by wife, with check to her, is not treated as sufficient because the check, by mistake, was placed to husband's credit on wife's refusing to accept it.

4. SPECIFIC PERFORMANCE. *Where vendor has title, contract will not be specifically enforced as to one-seventh of tract embraced; vendor having title to no more.*

 Where contract is to sell tract of two hundred eighty-two acres, it will not be specifically enforced against vendor to the extent of the forty acres only to which he has title, especially where, at time of acceptance, acceptor knew of the deficiency in title.

5. VENDOR AND PURCHASER. *Purchaser held not entitled to damages, where before acceptance he learned vendor had title to but small part of tract offered.*

 Where before any acceptance of offer to sell purchaser learned that vendor had title to only small part of tract offered, purchaser is not entitled to damages for breach.

---

*Corpus Juris-Cyc. References: Deeds, 18 C. J., p. 198, n. 27; p. 199, n. 29; p. 208, n. 24; Husband and Wife, 30 C. J., p. 855, n. 23; Specific Performances, 36 Cyc., p. 742, n. 77; Vendor and Purchaser, 39 Cyc., p. 1195, n. 93; p. 1219, n. 6; p. 2081, n. 26; p. 2082, n. 39 New.

APPEAL from chancery court, of Hancock county.

HON. V. A. GRIFFITH, Chancellor.

Suit by W. W. Chapman against Andrew Lott and wife. Bill dismissed, and complainant appeals. Affirmed.

*Ford, White, Graham & Gautier,* for appellant.

I. The lower court erred in holding that appellant was not entitled to specific performance of his contract against the appellees. The general rule is well stated in *Dickson* v. *Green,* 24 Miss. 612, wherein the court stated, "It is the settled doctrine that if one man knowingly, though he does it passively by looking on, suffers another to purchase and expend money on land under an erroneous opinion of the title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person." See also 21 C. J., page 1172, paragraph 177 (2) which clearly illustrates this rule when it states: "When the true owner of property holds out another, or allows him to appear as the owner of, or as having full power of disposition

over the property and innocent third persons are thus led into dealing with such apparent owner or person having such apparent power of disposition, they will be protected." See also 30 C. J., page 857, paragraph 536; *McNichols v. Kettner,* 22 Ill. App. 493; *Coleman v. Simmes,* 56 Miss. 321; *Levy v. Gray,* 56 Miss. 318; and *Richardson v. Toliver,* 71 Miss. 966.

We submit that the facts clearly show that appellee, Andrew Lott, was the real owner of the land, though the nominal title was in his wife, and that she is estopped to claim the land and that the lower court erred in refusing to decree specific performance of their contract with appellant.

II. In any event appellant is entitled to specific performance of the contract so far as same relates to one forty of the land. The answer admits title to this is in Andrew Lott. Taking up the question of whether or not the vendee is entitled to performance of his contract for the land to which the vendor has title, and to damages for the residue which he is unable to convey, we find the rule in Mississippi stated in *Wilson v. Cox,* 50 Miss. 133. See, also, *Whiteside v. Winans,* 29 Pa. Sup. Ct. 244; *Bryant Lbr. Co. v. Wilson,* 151 N. C. 154, 65 S. E. 932, 134 A. S. R. 982; *Kares v. Covell,* 180 Mass. 206, 91 A. S. R. 271; *Corbett v. Schultz,* 119 Mich. 249, 77 N. W. 947; *McCreary v. Stallworth,* 102 So. (Ala.), 52; *Bartee v. Mathews,* 103 So. 874; *Townsend v. Vanderwerpe,* 40 L. Ed. 383; *Greer v. Doriot,* 120 S. E. 291; *Manning v. Carter,* 68 So. 909, 102 Ala. 307; Pomeroy on Specific Performances of Contracts (3 Ed.), 1926, page 903.

These authorities suffice clearly to show that the rule of this court and of other states is to hold the vendor responsible for his fraud in contracting to sell more land than he owns, by awarding specific performance for that which he can convey and damages for the balance to which he is unable to make title.

Coming now to the manner of arriving at the damages which the purchaser has sustained, we find the rule laid down in 27 R. C. L. 630. *Butte Creek Dredging Co.* v. *Olney*, 161 Pac. 260, is also in point. See, too, 2 Am. Dig. Key No. Series 1916-17 at page 2031; *Ackely* v. *Parsons*, 181 N. Y. P. 116; *Householders* v. *Nispel*, 195 Pac. 932; *McMillan* v. *Betz*, 224, Ill. App. 117; *McFarland* v. *Dixon*, 187 N. W. 671; *Howell* v. *Pate*, 106 S. E. 454; *Lyman* v. *Harvey*, 108 Atl. 850; *Carter* v. *Schrader*, 175 N. W. 329; *White* v. *Harvey*, 157 N. W. 329; *Grady* v. *Tucker*, Freeman's Chancery, page 2-9; *Beck* v. *Statts*, 16 L. R. A. (N. S.) 768.

III. The third assignment of error is based on the holding of the court that Chapman did not accept Lott's written proposition. We have already shown that the trial court was wrong on the facts as to this point. It follows, therefore, that Chapman is entitled, either to damages or performance, or both.

IV. The court erred in declining to grant damages to appellant without amendment of his pleadings. It has been held repeatedly in this state that under a prayer for general relief, the complainant is entitled to such relief as is consistent with the case made by the bill and shown by the proof and moreover damages *eo nomine* were claimed here. *Dodge* v. *Evans*, 43 Miss. 570; *Barkwell* v. *Swain*, 69 Miss. 907; *U. S. Casualty Co.* v. *Malone*, 126 Miss. 288; Griffith's Miss. Ch. Pr., 182, section 186; citing *Burnet* v. *Boyd*, 60 Miss. 639.

Appellant insisted that under the prayer for general relief he was entitled to the damage proved, and after the chancellor had announced his opinion though no decree was yet rendered, complainant offered to amend his bill of complaint in order to pray for damages, more specifically in the alternative. A motion was filed for leave to amend the bill of complaint, and the amended bill tendered to the court which motion the court over-

ruled and this action of the court in overruling this mo-
tion is assigned as the fifth ground of error by appel-
lant.

Why should the amendment not be made? Section 353,
Hemingway's Code; *Levy* v. *Rayston,* 84 Miss. 15; *Jef-
fries* v. *Jeffries,* 66 Miss. 216; *Metcalf* v. *McCuthen,* 60
Miss. 142; Griffith's Miss. Ch. Pr., section 396, page 408.

It is only in the most exceptional cases that the court
will ever order specific performance of a contract for the
conveyance of a less amount of the property than that
in the option, and never when the amount to which the
deed would be ordered made is only a small fraction of
the entire description contained in the option.

Again it has never been held anywhere that where the
purchaser knew at the time that he obtained the op-
tion that the party signing it owned only a part of the
land, the court would order a specific performance of
even that part. 36 Cyc., page 742; *Spadoni* v. *Frigo*
(Ill.), 138 N. E. 226; *Baker* v. *Puffer,* 132 N. E. 429;
*Rosenow* v. *Miller,* 207 Pac. 618; *Moore* v. *Lutjeharms et
al.* (Nebr.), 136 N. W. 343; *Hall* v. *Loomis,* 30 N. W. 37;
*Senter* v. *Monroe,* 19 Pac. 580; *Kaiser* v. *Leein,* 137 N.
W. 52.

If the court could surmount the obstacles suggested
hereinabove and be inclined to grant a specific perform-
ance of a contract for the forty-acre tract of land, we
submit that there stands another difficulty in the way,
and that is that there is no proof to show the peculiar
value of the particular forty-acre tract of land. See 15
C. J. 1321, section 224.

Specific performance is always a matter of grace and
not of right, and it will never be granted unless the
court's decree can be certain and specific, and the court
in granting it is satisfied that no injustice is being done.

III. As to the measure of damages, we submit that
speculative damages can never be allowed. In this case
Chapman has lost nothing but the hope of a bargain that

he might have made. He has proved no special damage; in fact, has failed to prove the value of the land, so we submit that there is nothing before the court on which it might base a decree for damage. If under these facts, damages can be granted, then no man's property is safe. On the question of the general liability of Lott to Chapman, see 2 C. J. 810, section 483.

*Gex & Waller,* for appellees.

There are three unsurmountable obstacles to the plaintiff's right of recovery, either one of which would necessitate the dismissal of his suit, and all of which have been decided against him by the court on practically the undisputed evidence.

I. Was there a valid contract on which specific performance could be ordered against anyone? The contract shows that there was no consideration given therefor. Both Chapman and Lott testify positively that not a copper was paid in support of the contract, at the time of the making thereof; therefore, we submit that the contract as written was void. *Kolb* v. *Land Co.,* 74 Miss. 567; *Stigler* v. *Jaap,* 83 Miss. 351; *North* v. *Comstock,* 88 Miss. 754. See, also, the very recent case of *Coatesworth Bancroft* v. *E. C. Martin et al.,* 144 Miss. 385, 109 So. 859.

After making the option Chapman went to the record and found that the lands did not belong to Lott; therefore, he would not accept the void option or exercise any right he might have thereunder, but with a hope of holding *Mrs. Lott,* he tendered a check—not money, which he should have tendered—made payable to *Mrs. Lott.* Lott had no right to cash the check, and by taking the check for Mrs. Lott certainly no consideration was inserted in the void contract, nor could the check be considered as an acceptance by Chapman of the option.

Since both the Lotts had the right to withdraw the contract, until it was accepted and tender of the purchase

price and deed made, we submit that the proof shows that to this date respondents have not been put in default and, therefore, specific performance cannot be had. Griffith's Ch. Pr., section 522.

II.   Assuming the contract or option to be sufficient, what right has the court to rewrite the contract, and strike therefrom a description known as the "Nelson Place, containing two hundred eighty-two acres" and write therein the "Northeast quarter of Northeast quarter, section 2, Township 8, South, Range 15 West, containing forty acres" and then with a contract thus amended, or re-written, order specific performance?

The court could not write a contract for these parties and thereon order specific performance when it is clear from the paper what the parties meant by their contract.

ANDERSON, J., delivered the opinion of the court.

Appellant filed his bill in the chancery court of Hancock county against appellees, Andrew Lott and his wife, Elizabeth Lott, for the specific performace of a contract, by the terms of which it was alleged that appellees agreed to convey to appellant two hundred eighty-two acres of land in Hancock county, in consideration of twenty dollars per acre to be paid by appellant to the appellees. There was a trial on bill, answer and proof, and a decree for appellees dismissing appellant's bill.   From that decree appellant prosecutes this appeal.

The contract which the bill sought to have specifically performed was in this writing, in this language:

"Kiln, Miss.

"This is to certify that I have this day given W. W. Chapman, of Bay St. Louis, an option on two hundred eighty-two acres of ground known as the old Nelson place and now owned by me, at a cash amount agreed upon and paid to me. Purchase price to be twenty dollars per acre.

"[Signed]                        "ANDREW LOTT."

The chancellor, in a written opinion, found the law and the facts of the case. This opinion is a part of the record of the cause on appeal. We think the chancellor's finding of facts was justified by the evidence, and we also agree with him as to the law of the case. His opinion so clearly states the facts of the case and the law applicable thereto that we adopt it as the opinion of this court. It follows:

"About fourteen years ago the defendant, Andrew Lott, owned a tract of land now sometimes called the Nelson place and upon which land he and his wife had long lived as their homestead. Owing no one, and having a right to do so, he conveyed this land to his wife, Elizabeth, the deed being promptly recorded. This land, together with forty acres, subsequently acquired by Mr. Lott lies in a body and comprises two hundred eighty-two acres. The relationship of the husband and wife being and having been always one of complete trust one in the other, Mr. Lott apparently continued to look after the land and manage it very much as his own, although there does not appear in the evidence any real or specific authority to him from his wife so to do.

"On or about April 13, 1925, Mr. Lott, without the then knowledge of his wife, signed and delivered unto the complainant Chapman, a paper termed an option by which Mr. Lott, styling himself as the owner, agreed to convey this Nelson tract, upon a time not stated, to the complainant for a total purchase price of twenty dollars per acre. No consideration was paid by the complainant for this so-called option, nor did the complainant thereby bind himself to do anything, it being explained by complainant in his testimony that it was not his intention to pay anything or bind himself to do anything until he had made further investigation. The complainant investigated and believed that he had discovered from the public records that the entire tract belonged not to Mr. Lott, but to Mrs. Elizabeth Lott; but having made financial arrangements and desiring to purchase the land,

he returned to Mr. Lott and there tendered not a payment to Mr. Lott under the paper which Mr. Lott had given complainant, in which paper as already mentioned, Mr. Lott had styled himself as the owner of the lands, but a payment by way of a check payable to Mrs. Elizabeth Lott, and bearing the provision on its face as follows: "To bind sale of two hundred eighty-two acres of land on Jordan River in the name of Elizabeth Lott. This check is a part payment on same at twenty dollars per acre." Mr. Lott took the check to his wife, but she promptly refused it and repudiated the whole transaction as unauthorized and as being contrary to her will in the premises.

[1] "Upon the above statement of the salient facts, so far as concerns Mrs. Lott, it is apparent that Mrs. Lott cannot be compelled to specifically perform an agreement which she never made, never authorized to be made and which she promptly declined to ratify. Complainant, sensing this, has sought to hold to the land as against her upon two theories: First, that the land in reality belonged to Mr. Lott, and that the wife, Elizabeth, held the nominal legal title merely as a trustee for her husband, the allegation being that the conveyance to her by her husband, had been originally in fraud. The proof fails to support this theory—on the contrary it is overthrown by the proof. Second, that the deed from Mr. Lott to Elizabeth was never delivered. It is enough on this point, and so far as this case is concerned, that Mr. Lott deliberately signed and acknowledged the deed to his wife and delivered it for record among the public records of the county. The formal ceremonial of a manual delivery from the grantor to the grantee is not a thing so sacroscanct that no other overt act evidencing a completed intention to convey may be accepted in lieu of the actual delivery into the very grasp of the vendee. Certainly Mr. Lott, after the delivery by him of this deed for recordation could not say he had not by actual overt act, open to the world, evidenced his delivery in an accept-

144 Miss.—54.

able manner, and no one claiming through him subsequently would have a higher right than he in that respect. It is not probable in the average home of this country that the husband and wife keep their papers separate one from each other, and the deposit of the deed in the home of the Lotts in the manner in which it was deposited, was perhaps not different from that of thousands of other deeds between husband and wife. It seems to me that this is an occasion typical for the application of the maxim that substance rather than form shall be regarded and shall control.

[2,3] "But complainant says, in any event, he should have a decree for the forty acres that Mr. Lott actually owned. There are two difficulties which bar the way to this relief. First, the complainant did not accept the so-called option or offer made by Mr. Lott as it was made; he attempted to accept something else, namely, he attempted to erect and accept a new or different trade, one with Mrs. Lott, which failed for two good reasons, first, Mrs. Lott had made no offer on her part, and second, she refused to accept the proposed trade on the other part. It is familiar learning that an acceptance of an offer must be in the identical terms of the offer—not of something else, or with new or different elements interposed. Complainant did not accept in its identical terms the offer made by Mr. Lott, but he attempted to build a new trade upon the offer made by Mr. Lott, this new trade to be with Mrs. Lott. The offer made by Mr. Lott was not attempted *to be accepted* as the end of a binding contract; that was not the end to which the complainant was working—it was merely a means attempted to be used as a conduit to a trade with Mrs. Lott. Complainant seeks to get around this difficulty by showing that the two hundred fifty dollar check payable to Mrs. Lott was afterwards taken by Mr. Lott to the bank, and that by that means, although *through* an error in the bank, the money was placed to the credit of Mr. Lott. But it was explained that this was done, first through

oversight, and second that the oversight happened because Mr. Lott believed that after a while Mrs. Lott might recede from her position and allow the transaction to go through. We must not, in this maze, lose sight of the controlling thread, which is that the money was never Mr. Lott's, was never paid to him to be his, and he, himself, therefore could do nothing by which title to it could get into him.

[4] "The second difficulty is that I do not believe any case can be found where specific performance has been decreed of so small a portion of property compared to the whole as is forty acres compared to two hundred and eighty-two acres, more especially when at the time of the acceptance of the offer—conceding for the time that there was an acceptance here,—the acceptor knew of the remarkable deficiency in title. Courts are continually warned by the precepts both of right and of experience against the attempt to enforce contracts which the parties never made. It is true that where the defect in title or area has been small, as compared to the whole, justice has been persuaded in many cases to yield to an approximation, but the proprieties of judicial administration would be indefensibly strained, it seems to me, if so little as forty out of two hunderd and eighty-two acres should be selected for the highly equitable remedy of specific performance. Certainly the parties at the time never contemplated or even thought of such a thing as within the range of the remotest possibility.

"As to the damage feature, that is to be dismissed at once as to Mrs. Lott. As to Mr. Lott, I have already stated that it is my conclusion that no mutually binding contract was ever made by the complainant with Mr. Lott. The option was a unilateral offer, without consideration, and was never accepted as made. There was an attempt made to accept something else, but not the particular and identical offer made by Mr. Lott. Besides that, and before the complainant had made any attempt to accept, or had done anything upon which dam-

ages could be based, he discovered that Mr. Lott did not own the land, and that he therefore could not convey it. The complainant, therefore, lost nothing in the eyes of the law. He lost only what he *had* thought was an opportunity to make a good trade, but which turned out as nothing.

"It follows from the above that the defendants are entitled to a general decree, except that it appears that the two hundred fifty dollars is still some way in the hands of the defendant, Andrew Lott, although he makes no claim to it and offers to return it. Under the prayer for general relief, complainant may have decree for this two hundred fifty dollars against the defendant, Andrew Lott; and since the acts of the defendant Andrew Lott, in assuming to deal with this land as his own, has probably caused this law suit, let him pay all costs."

*Affirmed.*