BEAUCHAMP *et al. v.* McLAUCHLIN *et ux.*

(In Banc. April 22, 1946.)

[25 So. (2d) 771. No. 36111.]

84

Morgan & Thornton, of Kosciusko, for appellants.

**A. M. Warwick**, of Carthage, for appellees.

Argued orally by **C. E. Morgan**, for appellants, and by **A. M. Warwick**, for appellees.

**Roberds, J.**, delivered the opinion of the court.

Pat N. McLauchlin and his wife, Wyvette McLauchlin, appellees, filed their bill in the Chancery Court against H. B. Beauchamp, C. E. Morgan, A. H. Cauthen and Nelson Cauthen, the appellants herein, and the State of Mississippi, seeking to cancel a patent issued by the State to A. H. Cauthen to 40 acres of land and also a patent issued to Nelson Cauthen to 160 acres of land, and to annul and cancel a deed from the Cauthens conveying both tracts of land to appellants Beauchamp and Morgan, and to obtain a decree of the court adjudicating that Pat N. McLauchlin had performed such acts as were necessary to legally redeem said land from a tax sale to the State. The Chancellor sustained the bill and all of the defendants appeal except the State of Mississippi.

The tax sale in question occurred the 6th day of April, 1931, for delinquent taxes for 1930. Pat McLauchlin offered to redeem the lands from that sale, in the manner

hereinafter set out, in December, 1941, before he became twenty-three years of age on June 20th thereafter. A minor has two years after becoming of legal age within which to redeem his land from tax sale. Section 9948, Code 1942. Appellants contend that Pat McLauchlin was not the owner of the lands when they sold for taxes. That is grounded on the claim that there was no delivery of a deed to Pat, under the circumstances hereinafter related, until the year 1938, and that he had no title to the land until that time; that, until that time, the land was owned by D. J. McLauchlin, an adult, and that therefore the right of a minor to redeem under the foregoing statute did not exist. Was there a delivery of the deed to Pat McLauchlin prior to this tax sale in 1931?

On that question the record discloses that Dan J. McLauchlin, the father of Pat Newton McLauchlin, owned between three and four thousand acres of land in Leake County, Mississippi. He had several children and a number of grandchildren. He decided to give his children and grandchildren certain of his lands. He executed and recorded a deed to each of them. He delivered to the adult grantees their deeds and the deeds to the minor grandchildren he delivered to their parents for such minors. The deed to Pat is dated February 18, 1930, and describes the 200 acres of land in question. It recites a consideration of $1 ''and the love and affection I have for my son.'' The grantor delivered the deed to the Chancery Clerk on March 14, 1930, for the purpose of being recorded. It was actually recorded March 19, 1930. After being recorded the deed was redelivered to the grantor and by him placed in a trunk in his home, and he retained the physical possession of it until sometime in the year 1938. When the deed was executed and recorded Pat was around eleven years of age and was then living in the home of his parents, where he continued to live until he later married. During this time Pat and his mother both knew the deed had been executed and it was generally understood in the family that said land belonged to

Pat. Also during that time the father managed the land. It appears he rented it to two people. Apparently no cash rent was paid, the tenants using the land as a pasture and paying the rent by making certain improvements on the premises. On April 16, 1938, Pat married the appellant, Wyvette McLauchlin, and about that time, or shortly thereafter, the deed was physically delivered to him by his father. During 1938 and 1939 Pat constructed on the premises a residence of the value of five to six hundred dollars and a barn of the value of one hundred and fifty dollars. Pat and his wife moved into this residence and onto the land in October, 1939. Further acts of ownership will be detailed later but for the present purpose need not now be stated. The question is whether there was a delivery of the deed prior to the tax sale on April 6, 1931?

In Young v. Elgin (Miss.), 27 So. 595, the mother executed a deed conveying her residence to her daughter who lived with her and placed the deed in the grantor's wardrobe. The daughter knew nothing of the execution of this deed until the mother, when leaving to visit another daughter a few months after, told her where the deed was, and that she had given the property to her. The mother died, the deed still being in the wardrobe. This Court held that the deed had been delivered.

In Chapman v. Lott, 144 Miss. 841, 110 So. 793, this Court held that a deed executed by the husband to his wife had been delivered where the husband signed and acknowledged the deed and delivered it for record, although the husband obtained the deed after it was recorded and thereafter kept it with the family papers of himself and his wife in the home.

In the case at bar the grantee was a minor living in the home. The deed was placed by the father of record, which act itself was prima facie a delivery. He told the grantee he had executed the deed and the members of the family considered that the property belonged to the grantee. The physical possession of the deed was delivered to him upon his marriage, or shortly thereafter. We think

it is clear under all of the circumstances and the applicable rules of law that this deed was delivered to the grantee in 1930 and he then became the owner of the legal title to said land.

It is next contended by appellants that Pat did not perform sufficient acts to redeem the land. It is shown that after Pat married and moved onto the land he discovered it had sold for taxes in 1931. He and two older brothers went to the Chancery Clerk's office and Pat informed the clerk he understood the land had sold for taxes and that he wanted to redeem it from the tax sale. He exhibited to the clerk the deed from his father. He told the clerk that he was a minor when this sale was made. The clerk looked at his records and informed Pat that the tax sale had been reported to the State Land Office and that it was too late to redeem the land through his office and that Pat would have to consult the State Land Office. Pat and his brothers went to the State Capitol that same day and conferred with the State Land Commissioner, with the purpose to either redeem or re-purchase the land from the State. He exhibited to the Commissioner his deed and explained he was a minor when the sale took place, expressing at the time his understanding that the law gave protection to a minor whose land had sold for taxes. The Commissioner informed him, however, he could not issue to him a patent because the Cauthens had made applications for patents and the State was under obligation to issue such patents (one brother understood the patent to A. H. Cauthen had already been issued) and also because the Commissioner erroneously thought that a statute enacted after this sale affected Pat's rights to redeem or re-purchase his land. It is further shown without dispute that when Pat went to the Chancery Clerk and to the Land Office he had upon his person sufficient money with which to redeem the land or to re-purchase it from the State. Appellants contend these acts did not constitute a redemption. Specifically, they say the clerk was not requested to figure up the amount necessary to redeem

and no money was actually tendered the clerk or the Land Commissioner. Substantially the same facts and questions were involved in McLain v. Meletio et al., 166 Miss. 1, 147 So. 878, and Kelly v. Coker, 197 Miss. 131, 19 So. (2d) 519, and this Court held in both cases redemptions had been effected. Those cases are binding upon us unless we overrule them.

It is next contended by appellants that the proof fails to show that Pat offered to redeem the lands within two years after he became of age. Specifically they contend that the proof shows that Pat was born June 20, 1918. If he was born in 1918 his offer to redeem in December, 1941 came too late, but if he was born June 20, 1919, his offer to redeem was within two years after he became twenty-one years of age. The Chancellor found that he was born in 1919. The evidence in support of that finding is this; Pat and his mother swore to that fact and the Bible record made by his father, who died in July, 1941, showed that fact. The record of vital statistics of the State and the certificate of the attending physician also showed the date of his birth to be in 1919. As against that the Questionnaire submitted to his Draft Board, Form 40, and signed by him stated he was born in 1918. However, the registration card showed the year 1919. It is explained in this connection that the Questionnaire was actually filled out by a man named Mooney from information given to him by Pat, who testified that he gave to Mr. Mooney the year 1919. The county school records tend to show that he was born before the year 1919, although the County Superintendent of Education testified that the numbers on those records were vague and uncertain and he could not be sure what the numbers actually were. Pat married April 16, 1938. The application for the marriage license, sworn to by Pat, stated he was then twenty-one years old. However, this application was made by two friends by the name of Tullos, although signed by Pat. It is not shown whether the information in the application was furnished by Pat or by the applicants. It will be seen that the

Chancellor decided this fact upon conflicting testimony. It is evident, however, that the Chancellor had ample evidence to support his finding, in which case this Court has no right to reverse him. Therefore, his finding must be accepted by this Court.

Appellants earnestly urge that they are innocent purchasers for value. They say they had no notice, actual or constructive, that Pat endeavored to redeem the land. Appellees reply, first, that appellants did have constructive notice, and, second, if not, that the State had no power to convey title by the patents. On the question of notice the deed to Pat McLauchlin was actually recorded March 19, 1930. The deed to appellants from the Cauthens was executed August 5, 1942. It was a quitclaim deed "for a valuable consideration," and reserved to the grantors one-fourth of the oil, gas and mineral rights in the land. The application of Nelson Cauthen for the patent is in the record and recites that the land was valued for assessment purposes at $800, and that "P. N. McLauchlin" was the owner at the time of the sale, and the applicant agreed to pay 50 cents per acre for the land. The state patent to A. H. Cauthen to 40 acres of the land is dated December 12, 1941, but was not recorded until April 17, 1942, and the consideration was $87. The patent to Nelson Cauthen is dated February 13, 1942, and was recorded on April 17, 1942. The consideration was $1 per acre. The proof shows the land was actually worth about $2,000. Apparently the land was assessed in the name of P. N. McLauchlin when the tax sale was made and had been so assessed since that time. Pat paid the taxes on the land in 1940. Apparently appellant, Beauchamp, knew the McLauchlin family. The proof is he rented this land some two or three years. Further, on the question of notice of the rights of Pat McLauchlin, it is shown, as above stated, that Pat constructed a residence and a barn on the land and actually occupied and used it in 1940, placing some 30 acres thereof in cultivation. He moved from it in 1941 because he began to work at a defense plant

during the Second World War and his wife and child could not remain on the land alone and because his father had suffered a severe injury in a fall and Pat's wife moved to the father's home to help care for him. However, Pat rented out the land in 1941 and 1942 and his tenant was living thereon during that time. It will, therefore, be seen that appellants had notice of the public records affecting their title and the rights of the true owner of the land shown thereby and that Pat McLauchlin was in possession of the premises through his tenant when appellants obtained their deed August 5, 1942. Indeed, after obtaining their deed appellants stopped the payment of the rent to Pat McLauchlin by such tenant. Apparently also Beauchamp personally knew Pat McLauchlin. Both appellants knew the land had been assessed to Pat McLauchlin during all of these years and he had paid the taxes thereon for 1940, and was in possession thereof, when they obtained their deed more than eleven years after the tax sale on which they relied for title. Where a purchaser has knowledge of circumstances such as would put a prudent person acting in good faith on inquiry, he is chargeable with actual notice of the facts the inquiry would have disclosed. Parker v. Foy, 43 Miss. 260, 5 Am. Rep. 484; Baldwin v. Anderson, 103 Miss. 462, 60 So. 578. Open and notorious possession of land under claim of title is sufficient to put subsequent purchasers on inquiry as to the possessor's rights therein. Bolton v. Roebuck, 77 Miss. 710, 27 So. 630; Russell v. Scarborough, 155 Miss. 508, 124 So. 648; Palmer v. Fair Co., 140 Miss. 294, 105 So. 513. The possession of a tenant of real property is constructive notice, as to third parties, of the title of the landlord. Levy v. Holberg, 67 Miss. 526, 7 So. 431; Kalmia Realty & Ins. Co. v. Hardy, 164 Miss. 313, 145 So. 506. Inquiry by appellants of the man in possession and use of the land, to whom it was assessed for taxes and in whose name the title stood on the record, would naturally have disclosed to them that Pat McLauchlin had undertaken to redeem the land from the tax

sale made eleven years before appellants obtained their deed.

And on the question of the power of the State to sell and convey title under the foregoing circumstances, it was said in the McLain case, supra [166 Miss. 1, 147 So. 879], "appellant's offer to redeem within the two-year period took away from both the state and the drainage commissioners the power to convey title to anyone else," and in Kelly v. Coker, supra, the Court announced that "the offer and request to redeem when the party is ready and able to do so, where refused either arbitrarily or through unintentional misrepresentation of facts, took away from the state the power to convey the title to Burwell," citing McLain v. Meletio, supra, and Brannon v. Lyon, 86 Miss. 401, 38 So. 609. See also 61 C. J., p. 1287, par. 1788, and p. 1328, par. 1859.

Lastly it is contended by appellants that equity was not done in this case because the decree of the lower Court does not require Pat McLauchlin to pay all intervening taxes, if any, as a prerequisite to his right to redeem the land. The State was a party defendant to this proceeding and does not appeal and the foregoing question can not be raised by appellants. What other acts are necessary on the part of the landowner to effectually clear the record of this tax sale is a matter between him and the office of the Chancery Clerk and the Land Office of the State of Mississippi and are not now before us, and any claim of appellants to reimbursement for the money they have paid out is a matter between them and the State and the grantors in their deed.

Affirmed.