BROADHEAD *v.* JURY, et al.

No. 39850 January 3, 1956 84 So. 2d 385

*Riddell & Dabbs,* Quitman, for appellant.

*W. Vol Jones,* Waynesboro, for appellees.

ROBERDS, P. J.

George Jury, at the time of his death intestate in 1929, was the owner of the SW¼ of the SE¼ of Section 7, Township 10, Range 7, in Clarke County, Mississippi. The appellees are his heirs at law. They claim to be the owners of the land as such heirs.

On September 18, 1939, the land purportedly sold for nonpayment of the taxes for the year 1938 and was bought at such sale by Tom Hendrix, who, on May 4, 1943, executed a quitclaim deed to the land to Mrs. W. S. Knight. On the same day Mrs. Knight executed a quitclaim deed to appellant Broadhead, reserving one-half of the mineral rights. On August 3, 1950, Broadhead executed to Hercules Powder Company what is termed a "stump and wood" deed, and on November 20, 1950, and December 12, 1950, Broadhead also executed to the International Paper Company options to purchase said land.

The heirs of George Jury, being some twelve in all, by their bill in this cause, say that Minnie Jury, in legal effect, paid the taxes on the land for the year 1938 and

that, for that reason, the purported tax sale of September 18, 1939, was void and that Hendrix and his subsequent garantees got no title thereto under said tax sale. The chancellor so held and Broadhead alone appeals.

The question turns upon whether or not the proof is sufficient for the court to conclude that Minnie Jury, in legal effect, paid the taxes for the year 1938.

Minnie Jury was the wife of George Jury. The other heirs are children or descendants of such children. After the death of George, his wife continued to live upon the land. The land was assessed to her. She paid the taxes from year to year. There are receipts in the record showing the assessments to, and the payment of the taxes by, her for the year 1933 to and including 1950. During this time the smallest valuation of the land was $70.00 and the largest $250.00. The amount of the annual tax was $2.49 to $10.45. All of the tax receipts for said years show the taxes to have been paid by Minnie Jury. All of these receipts acknowledge full payment of the taxes for the respective years. There were no partial, or quarterly, payments of the taxes for any year unless it was for 1938, which we will later discuss.

Coming now to the year 1938, the tax receipt is regular on its face, showing payment of the entire tax by Minnie Jury—$4.22. It is headed "TAX RECEIPT No. 1039 for 1938 taxes". It recites "RECEIVED OF Minnie Jury State, County and District Taxes for the fiscal year 1938, as per following statements and descriptions to-wit * * *", describing the land by governmental subdivision. It then says "Total Real Assessment $70", and sets out the amount of tax for each purpose, such as state tax, county tax, reforestration tax, etc. In other words, this receipt is for the total tax on the land and there is nothing thereon to indicate to any one that it is supposed to be partial payment of

the tax. However, the appellant says it was a partial payment as shown by this testimony:

Mr. I. N. Riley, who was the deputy sheriff in 1938 and the sheriff at the time he gave his testimony, testified that he issued the foregoing tax receipt; that it is in his handwriting, but that he has no independent recollection about the facts at the time the receipt was issued. He said it was the practice to issue tax receipts "When they come in the office to pay them or request statement and mail them in to me." In other words, all he knows about the transaction is that he signed, issued and delivered the receipt purporting to be for the entire tax. He then testified that sometime after this receipt was issued, he assumes in June or July, when checking land to be advertised and sold for nonpayment of taxes, he wrote on a duplicate of the foregoing original tax receipt the words "one-half payment". This was six months after he had issued the original receipt purporting to show that the entire tax had been paid. He also testified that the assessment roll showed the valuation for this and to be $140.00 and that some one, he thinks Mr. Lee Hunter, an employee in the sheriff's office, wrote on the assessment roll with pencil the words "70 $\frac{1}{2}$". He does not know when that was done but assumes that it was sometime after the original tax receipt was issued. He said "It was our custom to mark one-half when it was paid in one-half on the roll, and also on the receipts, which I didn't do there." On cross-examination he repeated that when an installment payment only was made this was noted on the original receipt. Mr. Riley was the only witness who gave oral testimony. Minnie Jury was in the courtroom but the chancellor observed that her mental condition was then such that she was unable to testify. Was the lower court justified in concluding that this was, in legal effect, a payment of all the tax by Minnie Jury? This question should be construed liberally in favor of

the taxpayer. McLain v. Meletio, et al, 166 Miss. 1, 147 So. 878, and James v. Tax Investment Co., 206 Miss. 605, 40 So. 2d 539. The reporter deduced this rule from Golden et al v. Grady, 34 So. 2d 877 (Fla.): "A good faith attempt by owner of interest in land to pay taxes thereon to proper officer, whose mistake, wrong or fault prevents such payment, is equivalent to tender of amount due, at least so far as to invalidate subsequent sale of land for taxes."

This Court has held that where a chancery clerk informed the taxpayer there were no outstanding tax sales of his property the taxpayer was not required to tender the amount necessary to redeem, and that this offer took away the power of the state to sell the land for nonpayment of taxes. McLain v. Meletio, supra. See also Beauchamp v. McLaughlin, 200 Miss. 83, 25 So. 2d 771, and Kelly v. Coker, 197 Miss. 131, 19 So. 2d 519. The offer to pay need not be in technical language. James v. Tax Investment Co., supra.

In 2 Cooley, Taxation, 3d Ed. p. 809, the rule is stated in this language: "If the owner of land or the holder of a lien thereon applies in good faith to the proper officer for the purpose of ascertaining the amount of taxes and of paying the same, and is prevented by such officer's mistake, wrong, or fault, such attempt to pay is generally regarded as equivalent to payment."

Many cases, illustrating the rule under consideration, are annotated in 107 A. L. R. beginning at page 573 thereof. The annotator, at page 575, deduced this rule: "The above rule seems to have been applied by implication to many cases which apparently have not involved a positive, all-inclusive assertion as to the status of taxes on particular property. Thus, the complementary rule seems well established, that a certificate or *statement* which gives information regarding delinquent taxes, purporting to be complete, amounts to a positive declaration that no further delinquencies appear of rec-

ord, upon which the recipient is justified in relying.''
(Emphasis supplied).

 Under the proof here Minnie Jury appeared before the proper officer to pay her taxes. That officer issued to her a statement showing she was paying all of the taxes owing on the land for 1938. That was certainly a representation that this covered all of the taxes. There is no evidence she was informed this was only a part of the taxes. In addition to this it is shown that for all of the years she paid taxes prior to 1938 and all of the time since that year—she had never paid the tax in installments. She always paid the entire tax. The amount of the tax she paid in 1938 and the valuation of the land shown on her tax receipt were in line with the amounts and valuations for the many other years she had paid her taxes. If the contention that Minnie paid only half of her taxes is correct the balance owing would have been only $4.22 and we cannot assume that she could not have paid that small amount.

It is but reasonable and logical, from the foregoing facts and circumstances, that Minnie intended to, and thought she had, paid all of her taxes, as she had done in all the past years, and that her failure to do so, if in fact she did not, was due to the error of the tax collector in telling her and accepting from her, the wrong amount, and in issuing to her a receipt in full payment of her taxes.

Affirmed.

*Lee, Holmes, Arrington* and *Ethridge,* JJ., concur.