WILLIAMS *v.* SCOTT

No. 43255          January 18, 1965          170 So. 2d 621

*David Williams,* Brandon, for appellant and cross-appelllee.

*Creekmore, Beacham & Newman,* Jackson, for appellee and cross-appellant.

APPELLANT IN REPLY.

*E. W. Stennett, Val Surgis, Pat H. Scanlon, Young & Young,* Jackson, amicus curiae.

*K. Hayes Callicutt, Satterfield, Shell, Williams & Buford,* Jackson, amicus curiae.

JONES, J.

This case comes from the Chancery Court of the First Judicial District of Hinds County, Mississippi, and involves the validity of a tax sale on April 3, 1961, by the City Tax Collector insofar as Lot 10 less 5 feet West side to street, Underwood Survey Part I, in the city of Jackson, First Judicial District of Hinds County, Mississippi is concerned.

A decree was entered confirming the title of the appellant acquired as a result of said tax sale, but providing that the cross-appellant held a lien on said property for something like $10,000.00 for the cost of a duplex erected thereon and for subsequent taxes paid on said property. Williams, the holder of the tax title, being dissatisfied with the requirement that he be required to pay to Scott the cost of said duplex together with taxes paid by him on said property, appealed to this Court asking that his title be confirmed to said property and that the lien of Scott for the amounts aforesaid be cancelled and removed and that the appellant be held to be the true owner of said property free and clear of such liens.

Scott cross appealed, alleging that the tax sale was absolutely void; that the title of the appellant should not be confirmed, and that the purported tax sale and

any subsequent deeds should be cancelled and held for nought and title to said property confirmed in the cross-appellant.

We reverse the decree of the chancellor, hold that the tax sale was absolutely void; that the appellant acquired no title to said property by virtue thereof; that the cross-appellant is the true owner of said property, and that the claims of the appellant thereto should be cancelled except insofar as taxes that should have been paid by cross-appellant, but that were paid by appellant or his vendor, with proper interest, etc.

The purported tax sale was held as aforesaid on April 3, 1961, and at said sale Charles C. Hairston became the purchaser. Two years thereafter the said purchaser was delivered a deed by the city and almost immediately after acquiring said deed he executed a quit claim deed to the appellant M. F. Williams.

The G. A. C. Finance Corporation of Jackson and Bernard W. N. Chill, trustee, were made parties to the original bill. It is charged that B. J. Singletary and wife had executed a deed of trust on said property to Southern Loan Corporation of Jackson which thereafter changed its name to G. A. C. Finance Corporation of Jackson. These two defendants, the finance corporation and the trustee, entered a disclaimer and asked to be dismissed from the suit, which was done.

At the same time that the land sold to Hairston it sold for two special assessments, one of said sales being to Hairston and the other being redeemed by L. L. Shelton who asked to intervene. It was agreed by both parties that Shelton should be repaid the amount expended by him in the redemption plus such interest, etc., as he may be entitled to receive.

The facts show: The cross-appellant Scott was owner of several pieces of property in the city of Jackson and this particular piece of property was acquired by him on August 15, 1960, by warranty deed from B. J.

Singletary who was then the owner of the property and to whom same was assessed. In this deed grantee assumed the payment of all taxes and special assessments.

Scott was a man of approximately eighty years of age, and his son, Fred Scott, handled his business for him. Fred purchased this property, employed a lawyer to check the title, and secured from a title insurance company a title policy for the amount paid for the property, which was the sum of $2,200.00.

After the title had been ascertained to be clear except for taxes and special assessments, the cross-appellant proceeded through his son to have erected on said lot a duplex apartment at the cost of $9,500.00 and the record shows that the said property was thereafter appraised at $12,000.00 or more. The acquisition of the property was handled by the son in a very business-like manner.

The son testified that on January 5, 1961, he took with him tax statements which had been received showing the taxes due on other property owned by his father, and also carried with him the deed from Singletary to his father, which deed included the lot which was sold and also Lot 12, the description in the deed being "Lots 10 and 12, Underwood Survey Part I according to map or plat thereof on file . . . ." With these statements and this deed he first went to the office of the Tax Collector of Hinds County, Mississippi, presented his tax statements and the deed, advised the County Tax Collector that he desired to pay all the taxes on all the properties described in both the tax statements and the deed. The amount of these taxes was given to him and he paid same as shown by tax receipts dated January 5, 1961, and introduced in evidence. From the Sheriff's office he went to the office of the City Tax Collector, carrying the same tax statements and the deed, presented them to the deputy tax collector, with the same statement to him that he desired to pay all of the taxes against

all of the properties described in said statements and deed including the special assessments thereon. He carried with him a check signed by his father with the payee and the amount thereof left in blank. He says the deputy tax collector examined the records and gave him the figure of $191.63 as being the amount of taxes due on all the properties. The deputy tax collector filled in the name of the City of Jackson as payee in said check and also wrote ''One Hundred Ninety-one & 63/100'' in the space for writing the amount of the check. The cross-appellant himself had ridden in the car to the City Hall with his son and on account of the necessity to visit a restroom, had left the car, come into the building, and then gone to the office where his son was. When the City Tax Collector had filled out ''City of Jackson'' and the amount of dollars aforesaid on said check, the cross-appellant, who had already signed same, suggested that it be shown what the check was for, and he took the check and wrote after the word ''For'' the words ''1960 City Taxes'' and put the figures in the space provided for the amount of the check. This was in the presence of the tax collector and the check was accepted by him and in due course was paid. There was introduced a bank statement from the First National Bank of Jackson showing that the cross-appellant had more than sufficient money on deposit to pay all of the taxes against the said property, the amount of same being very small. On the date that the check was given he had over $1,500.00 to his credit and the least amount he had after that as shown on the statement was over $1,000.00 on January 18, 1961.

For the years 1961 and 1962 the taxes on this property were paid by the cross-appellant, his son testifying that the same procedure was followed at the Sheriff's office and the City Tax Collector's office for those years. ■■■ The son is positive in his statement as to what occurred. He is corroborated by the check which

was introduced and which was admitted by the deputy tax collector, and the tax collector admitted that he wrote the name of the payee and the amount of the check in there. He also issued a tax receipt for Lot 12 which was not on a tax statement, but was described in the same deed that conveyed Lot 10. He admitted that he had to go to the records to get some of the figures. The state and county taxes, as aforesaid, were paid, as were taxes for 1961 and 1962.

The deputy tax collector was introduced as a witness. He admitted that the cashier's number on the check in question was his number; that he was with the City Tax Collector's office; and that as stated, he filled in the name of the payee and the written amount of the check. There is no dispute between him and cross-appellant on this feature. He had no recollection at all of this particular transaction, but admits that he as aforesaid filled in part of the blank check and issued the tax receipts that were issued, his signature being on each of them, and all of them being dated January 5, 1961. There was among the receipts a special assessment payoff which the witness said could not have been represented by a statement which the taxpayer brought, and that he had to look up that amount. Among the receipts as heretofore stated was a receipt for Lot 12 which was in the same deed as Lot 10. The witness did not know Fred Scott. He says he did not know him by name, but he might know him if he were to see him, but he couldn't say. He was asked whether he recalled that on January 5, 1961, he had any dealings with Fred Scott. His answer was, "No, sir. I couldn't recall that." He admitted that people would bring their tax statements to the office to pay their taxes and they would check them with receipts in the book and figure the cost. He was asked by counsel for appellant:

"Q. Did you at any time that a taxpayer came to your window turn down taxes that he offered to pay

for any reason that you know of, whether he was colored or white, black or for any other reason?

"A. No, sir.

"Q. In other words, every time somebody came up there and wanted to pay taxes, you took the money; is that right?

"A. That's right. Yes, sir."

The Court interjected to say:

"Q. What you mean to say, you never intentionally did it.

"A. No, sir, never intentionally turned down anybody. Of course, now if they didn't have the money or something like that, it would be a different story."

This is the substance of the tax collector's testimony. It is vague, indefinite. He has no recollection of the transaction at all. He never denied the testimony of Fred Scott. The tax collector's testimony amounted to no evidence. *James v. Tax Investment Co.,* 206 Miss. 605, 40 So. 2d 539 (1949).

*Broadhead v. Jury,* 226 Miss. 311, 84 So. 2d 385 (1956) involved the offer to pay ad valorem taxes. The lower court cancelled the tax deed there involved. That was a case where the landowner had attempted to pay her taxes and our Court quoted with approval: "In 2 Cooley, Taxation, 3d Ed. p. 809, the rule is stated in this language: 'If the owner of land or the holder of a lien thereon applies in good faith to the proper officer for the purpose of ascertaining the amount of taxes and of paying the same, and is prevented by such officer's mistake, wrong, or fault, such attempt to pay is generally regarded as equivalent to payment.' "

Further, in the case of *Parsons, d.b.a. Land Investment Co. v. Marshall,* 243 Miss. 719, 139 So. 2d 833 (1962), this Court, speaking through Judge Rodgers said: "The general rule as expressed by the textwriter in 41 Am. Jur., Taxation, Sec. 1069, p. 930, on this subject, is as follows: 'The general rule is that when the

owner of land applies in good faith to the proper officers for the purpose of paying taxes on the land, but payment is prevented by the erroneous statement of the officers that such taxes have already been paid or that none are due, or by other mistake or fault on his part, the attempt to pay is deemed the legal equivalent of payment, so far as to discharge the tax lien and as far as the sale of land for nonpayment of taxes; a tax deed based upon a subsequent sale would not pass title.' See also 21 A.L.R. 2d 1307.'' There is a line of Mississippi decisions regarding redemptions from tax sales that is in accord with the two cases above-cited: *Beauchamp v. McLauchlin,* 200 Miss. 83, 25 So. 2d 771 (1946); *Kelly v. Coker,* 197 Miss. 131, 19 So. 2d 519 (1944); *McLain v. Meletio,* 166 Miss. 1, 141 So. 878 (1933), and other cases.

We find that the chancellor was manifestly wrong in confirming the said tax sale. Under the undisputed facts here, the case is brought within the rule of law as hereinbefore set forth, and the City had no power to convey the said land.

This view of the case makes it unnecessary for us to pass on any of the other assignments of error or questions here involved.

We hold that the appellant acquired no title under said deed, but only the right to be reimbursed for the amount of taxes, interest, and damages which were due to be paid at the time of the sale, and of course, subsequent interest thereon, with subsequent taxes, if any, paid by appellant.

The appellant is entitled to no relief on the direct appeal. The cross-appellant is entitled to have said tax deed and the deed from Hairston to Williams cancelled of record, and judgment to that effect is here entered. However, it is necessary to adjust the equities between the appellant and the cross-appellant regarding the amount to which he is entitled to receive as a refund,

and also the rights of the intervenor, L. L. Shelton. It was stipulated between the parties that his rights would be recognized by either party to the suit which was the victor.

The case is therefore remanded to the lower court for further proceedings not inconsistent with this opinion.

Affirmed on direct appeal; reversed and judgment entered on cross appeal, and the cause remanded.

*Lee, C. J., Ethridge, Gillespie, and Brady, JJ.,* concur.