**Marty LYONS, Plaintiff,**

v.

**Cooper MISSKELLY and John Hancock Mutual Life Insurance Company, Defendants.**

**Civ. A. No. J89–0445(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 24, 1990.

## MEMORANDUM OPINION
## AND ORDER

TOM S. LEE, District Judge.

Plaintiff, Marty Lyons, brought this diversity action seeking recovery of $20,000 paid to defendant John Hancock Mutual Life Insurance Company. Presently before the court is the motion of John Hancock for summary judgment. Plaintiff has responded to the motion, and the court has considered the memoranda and attachments submitted by the parties in ruling on the motion.

*Facts*

The perspectives offered by the various parties in this unusual tale involving the not-so-unusual pursuit of a quick profit differ greatly, and most assuredly those of which the court has the benefit for purposes of deciding the present motion do not tell the complete story. What follows are the relevant events as related by John Hancock, by a certain George "Mutt" Baker, whose affidavit has been submitted by plaintiff, and, finally, by plaintiff.

According to John Hancock, at all times relevant to the present dispute it was the owner of approximately 1925 acres of timberland in Holmes County, Mississippi near the town of Tchula. In early 1987 Cooper Misskelly contacted Paul Mier, John Hancock's agricultural investment advisor, and expressed an interest in purchasing the property. Subsequently, Mier sent to Misskelly a proposed Real Estate Sales Contract. This contract provided for a purchase price of $433,000 (approximately $225 per acre), with $20,000 of this amount to be paid as a deposit by Misskelly at the time of execution of the contract. The contract further provided that in the event that Misskelly did not purchase the property for any reason other than the fault of John Hancock, John Hancock would have a right to retain the $20,000 deposit as liquidated damages.

On March 26, 1987, John Hancock received from Misskelly the signed contract accompanied by a $20,000 check made payable to John Hancock. This check was drawn on the account of "Rolling Rock

Woodford W. Dinning and Woodford W. Dinning, Jr., pro hac vice, Lloyd, Dinning, Boggs & Dinning, Demopolis, Ala., for plaintiff.

Thomas D. Kirschten, Carrollton, Miss., for Cooper Misskelly.

Ranch" in Gallion, Alabama, and was signed by plaintiff, Marty Lyons. In the lower left-hand portion of the check were written the words "Down Payment Land Tchula Lake Farms, Holmes Co. to Cooper Misskelly." John Hancock deposited the check into its bank account approximately one month later when it accepted the sales contract signed by Misskelly. Misskelly was unable to obtain financing for the purchase and consequently defaulted on his obligation under the contract. By letter dated July 7, 1987, John Hancock informed Misskelly that it was retaining the $20,000 deposit as liquidated damages, pursuant to the terms of the sales contract.

The affidavit of George "Mutt" Baker, an Alabama timber and cattle farmer, provides details regarding plaintiff's involvement and how it came about that Misskelly used a check signed by plaintiff to pay the $20,000 deposit. Baker states that in early 1987 Cooper Misskelly informed him and Wayne Nettles, a businessman, that Misskelly had an opportunity to purchase certain property located in Holmes County, Mississippi for $225 per acre. Misskelly explained that if Baker and Misskelly would find a buyer willing to pay $300 per acre, they would receive the $75–per–acre difference. Misskelly informed them that they would need to obtain $20,000 as a down payment.

Plaintiff, Marty Lyons, was selected by Baker and Nettles for this investment opportunity. Baker and Nettles represented to Lyons that, in exchange for a $20,000 down payment, John Hancock would provide him with a contract to purchase the land at $300 per acre, the remainder of the $577,500 purchase price to be due in fifty-five days. Nettles also told Lyons that he would assist Lyons in obtaining financing for the purchase. Plaintiff made out a check for $20,000 payable to John Hancock, writing the words "Down Payment Land" in the lower left-hand corner of the check. He then gave it to Baker and Nettles, who forwarded it to Misskelly.

The Tchula Lake Farms deal as understood by plaintiff differed markedly from that described by Baker in his affidavit. Lyons states in his deposition that in early March of 1987 Baker and Nettles, who were involved in the timber cruising business, approached him with a proposal for him to purchase property from John Hancock. They informed plaintiff that they had performed a cruising assessment on the land and had determined its timber to be worth $800,000. They also stated that for $20,000 Lyons could purchase a sixty-day option from John Hancock to buy the property for $750,000 (approximately $390 per acre). According to plaintiff, Baker and Nettles represented that upon their receipt of a financial statement from plaintiff, they would obtain financing for $730,000, the remainder of the purchase price. Lyons also states that he believed that John Hancock would provide the financing, although he admits that he was never told this.

In any event, plaintiff went about obtaining the advice of Irving Marks, his New York investment counselor, concerning the deal. Marks flew down from New York for a weekend to discuss the transaction with Lyons. They determined that the deal would be a good one: For only $750,000 plaintiff would be purchasing property on which the timber alone was worth $800,000. Once he sold the timber, Lyons would have gained a quick $50,000 plus the land. Upon Marks' return to New York, he wired $20,000 to plaintiff. On March 24, Lyons wrote out a check payable to John Hancock for $20,000 with "Down Payment Land" written in the left-hand corner. He gave the signed check to Baker and Nettles for delivery to John Hancock.

Approximately one month later, Nettles and Baker proposed a change in the terms of the deal.[1] Plaintiff found the proposed change unacceptable, and threatened to stop payment on the $20,000 check, which he believed was being "held in escrow" by John Hancock. A few days later, he went

---

1. The nature of this proposal is unclear from the record. It appears to have related not to the actual purchase of the property, but to the amount of timber that would subsequently be cut.

to his bank and learned, to his dismay, that the check had been cashed. He then confronted Nettles and Baker about this fact, who insisted that John Hancock had a right to cash the check and that everything was going fine.

But everything did not go fine. Two days before the expiration of the sixty-day option which plaintiff believed he had purchased, Nettles called plaintiff to express his regret that he and Baker would not be able to obtain financing for plaintiff after all.[2] Plaintiff called Marks, who informed him that they could not obtain $730,000 in cash in so short a period of time. Consequently, plaintiff did not purchase the property. When he received the cancelled check from his bank, he saw that the words "Tchula Lake Farms, Holmes Co. to Cooper Misskelly" had been added to his notation on the check. This was the first plaintiff had ever heard of Cooper Misskelly. Plaintiff, through his attorney, then began an investigation and learned that the money had been used not for his own sales contract, which did not exist, but for a deposit on Misskelly's contract. He sought return of the money from John Hancock, which was refused. Lyons also attempted either to purchase the property or to find a purchaser for it—the record is not clear on this point. However, John Hancock subsequently sold the property to a third party unknown to plaintiff.

*Analysis*

It is plaintiff's contention that John Hancock committed a wrong against him by cashing his check and using the proceeds as a deposit on someone else's contract, i.e., Cooper Misskelly's. He seeks recovery from John Hancock of the $20,000 based on the law of restitution for money had and received[3] and conversion[4]. In support of its position that plaintiff is not entitled to the money, John Hancock relies on the undisputed fact that it never dealt with plaintiff and had no involvement in whatever mistakes or misrepresentations led plaintiff to provide the money for Misskelly's deposit. It also argues that it had the right to take the money from Misskelly as a deposit on the Misskelly sales contract and to retain it as liquidated damages.

Plaintiff's conversion claim fails as a matter of law. In order to succeed on a claim for conversion, a plaintiff must show that he owned or had a right to possess property which was the subject of an unauthorized taking or the unauthorized exercise of control by the defendant. *See, e.g., LaBarre v. Gold,* 520 So.2d 1327, 1330 (Miss.1987); *Masonite Corp. v. Williamson,* 404 So.2d 565, 567 (Miss.1981). Neither of these elements is present in the case *sub judice.* John Hancock's taking and exercising control over the money was authorized by Lyons when he provided John Hancock with the check. Moreover, by virtue of the check, plaintiff's rights to the money were terminated and John Hancock became the legal owner of the $20,000. There is simply no sense in which John Hancock's exercise of control over the money could be considered wrongful such as to form the basis for an action in conversion.[5]

2. Baker was apparently not as sympathetic to plaintiff's plight. According to Lyons, he ran into Baker at Miss Kitty's, a local bar, after the deal fell through. When questioned about the precise amount of money Baker had intended to make off of plaintiff, Baker responded by saying, "I will tell you why we did it to you, because you are a dumb m_____, you trusted us."

3. In describing the basis in law for this action, plaintiff in his complaint uses the terms "assumpsit," "money had and received," "implied, or quasi, or constructive contract" and "unjust enrichment." As plaintiff recognizes in his memorandum, all these terms refer or relate to what is commonly known in Mississippi as an action for restitution or for money had and received, and thus the court will refer to this claim in that fashion.

4. Plaintiff also mentions the common law action of trover in his complaint. This adds nothing to plaintiff's theories of recovery. Trover is not a separate or distinct cause of action from conversion; the term is merely the old common law name for an action for damages resulting from the conversion of personal property, *see* 18 *Am.Jur.* 2d § 1 (1985).

5. It should be noted that plaintiff did not as a result of John Hancock's acceptance or use of the money for the Misskelly deposit suffer any damages that he would not have suffered otherwise. Even if plaintiff had actually received an

■ Plaintiff's restitution claim for money had and received is, theoretically, more tenable. In his memorandum, plaintiff discusses at length the law regarding actions for money had and received, but nowhere does he explain the basis of his contention that he should be adjudged entitled to a return of the money held by John Hancock. That is, he has not revealed a specific basis for his contention that the money belongs to him. Nevertheless, the court has concluded that plaintiff's theory must necessarily be that he is entitled to restitution for money paid because of a mistake of fact, the mistake being plaintiff's belief that he was paying money for an option to purchase real estate from John Hancock, when in fact he was providing money for Misskelly's deposit on Misskelly's sales contract. Generally, one who erroneously pays money to another because of a mistake of fact may recover the payment from the payee. *See, e.g., USF & G v. Newell,* 505 So.2d 284, 287 (Miss.1987) (citing *Bessler Movable Stairway Co. v. Bank of Leaksville,* 140 Miss. 537, 106 So. 445 (1926)). However, no recovery may be had if the payee will not be left in the same position after he refunds the money as he would have been had the payment not been made. *Id.* Section 167 of the *Restatement of Restitution* explains how this principle applies in a situation where the payment is induced by the fraud or misrepresentation of a third person:

> Where the owner of property transfers it to another, being induced by fraud, duress or undue influence of a third person, the transferee holds the property upon a constructive trust for the transferor, unless before notice of fraud, duress or undue influence the transferee has given or promised to give value.

*Restatement of Restitution* § 167 (1937). As the section pertains to the case at bar, comment e provides a fitting example:

> *Where there is a bargain between the transferee and the wrongdoer.* Where the owner of property makes a transfer of the property to another, the transfer being induced by fraud, duress or undue influence of a third person, if the property was so transferred as a result of a bargain between the transferee and the third person, the transferee can be charged as constructive trustee thereof for the transferor, unless the transferee was a purchaser for value and without notice.... On the other hand, if he has paid value to the third person without notice, he is a purchaser for value, even though he received the property directly from the transferor. The situation is in substance the same as though the third person had by fraud obtained a transfer of the property and had subsequently transferred it to another.

*Id.* comment e.

■ The defense based on the defendant's status as a good faith purchaser for value without notice applies in the present case. It is undisputed that John Hancock had no actual knowledge of any wrongdoing. However, plaintiff attempts to create an issue as to John Hancock's constructive knowledge by pointing out that the check was signed not by Cooper Misskelly, the potential purchaser, but by plaintiff—a person previously unknown to John Hancock—and that the words "Tchula Lake Farms, Holmes Co. to Cooper Misskelly" in the left-hand corner of the check were not written by him, but rather, were added by Cooper Misskelly. His position is that these facts about the check should have caused John Hancock to make an inquiry into the circumstances of the payment. A person is charged with notice as a matter of law if the circumstances are such that a reasonably prudent person acting in good faith would be put on inquiry. *Beauchamp v. McLauchlin,* 200 Miss. 83, 25 So.2d 771 (1946). It is this court's conclusion that a finder of fact could not reasonably conclude that either any difference in the handwriting on the check's notation or the fact that it was signed by someone other than Misskelly should have put John Hancock on notice such that it had a duty

option to purchase the property, he would have lost the $20,000 because of his failure to obtain financing for the purchase.

to inquire before accepting the check and depositing it. The source of Misskelly's deposit money was not of any concern to John Hancock, and rightly so. And, assuming *arguendo* that there was a noticeable difference in handwriting on the check, John Hancock would have had no reason to suspect any wrongdoing or impropriety based simply on Misskelly's having added to plaintiff's original notation. Thus, the evidence does not raise a genuine issue as to notice on the part of John Hancock. Furthermore, John Hancock exchanged value for the right to receive the $20,000 in the form of foregoing for several months any attempt to find a purchaser for the land. Under these circumstances, John Hancock is a good faith purchaser for value without notice, and plaintiff is not entitled to restitution from John Hancock.

The court concludes that plaintiff has failed to come forward with evidence showing a genuine issue of material fact and that John Hancock is entitled to judgment as a matter of law. Accordingly, John Hancock's motion for summary judgment is hereby granted.

SO ORDERED.