323 So.2d 95 (1975)
SUN OIL COMPANY and Placid Oil Company, Defendants-Appellants,
v.
Paul BROADHEAD et al., Complainants-Appellees.
No. 48403.
Supreme Court of Mississippi.
December 8, 1975.
*96 Armstrong & Hoffman, John T. Armstrong, Jr., Hazlehurst, for defendants-appellants.
Goldman & Goldman, Meridian, for complainants-appellees.
Before RODGERS, PATTERSON and SUGG, JJ.
PATTERSON, Justice.
In 1973 Paul Broadhead and others filed this suit against Sun and Placid Oil Companies to confirm a mineral lease in lands situated in Clarke County. The chancery court held Broadhead's lease to be valid and from this decree Sun and Placid Oil Companies appeal. We reverse.
In 1946 S.B. Kirkland secured a one-half mineral interest in a 7.47-acre tract in Clarke County described as:
Beginning at the Northwest corner of the SW 1/4 of NW 1/4 of Section 32, rather ship 3 North, Range 16 East, and running thence due East a distance of 764 feet to the West side of the Old Quitman and Energy Highway, thence South 30 degrees 38 minutes West a distance of 624 feet to a stake on the West side of the Old Quitman and Energy Highway, thence due West a distance of 425 feet to the West boundary line of said Section 32, Township 3 North, Range 16 East thence due North a distance of 535 feet to the point of beginning, containing 7.47 acres, more or less. (Underscoring added.)
Kirkland died in 1953 devising the mineral interest to his wife, daughter and son. In 1962 the devisees executed an oil, gas, and mineral lease to Sun Oil Company on 1860.50 acres of land. The minerals (1/2 of 7.47 acres) in question were intended to be included in this transaction. However, the lease description erroneously designated the place of beginning as "the NW Cor. of SW 1/4 of NW 1/4 of Section 32," rather than "the Northwest Corner of the SW 1/4 of SW 1/4 of Section 32." (Underscoring added.) The remaining calls of the conveyance were the same as those in the deed to Kirkland. The Sun lease concluded with: "And, in addition, any and all land and rights and interest in land owned or claimed by Lessor and adjacent or contiguous to the land above described."
Thereafter on February 16, 1967, the same lessors to the Sun lease executed a mineral lease to Broadhead to their interest in the SW 1/4 of the SW 1/4 of Section 32. On February 17, 1967, Broadhead secured a mineral lease from Margaret E. *97 Lauer, who owned the other one-half mineral interest in the 7.47-acre tract, describing it as:
Township 3 North, Range 16 East. Section 32: SW 1/4 of SW 1/4 A net 3.75 mineral acres.
All mineral interests in the SW 1/4 of the SW 1/4 of Section 32 were pooled or integrated on May 19, 1971, and the unit has been in production since December of that year. Sun Oil has made the royalty payments to the Kirkland lessors accruing under their interest in the 7.47-acre tract.
Broadhead claims that because of the mistake in the description in the Sun Oil lease, "Beginning at NW corner of the SW 1/4 of the NW 1/4" instead of "Beginning at the NW corner of the SW 1/4 of the SW 1/4," he had no notice of the lease and is therefore an innocent purchaser for value. Sun and Placid contend that Broadhead had actual and constructive notice that the Sun Oil lease was intended to and did cover and include the one-half mineral interest of the Kirkland devisees.
The testimony establishes the title of the Kirklands to the mineral acreage in question. It also discloses that they owned no interest in the SW 1/4 of the NW 1/4 of Section 32. It reveals that the Quitman and Energy Highway, a monument in the recitals in the deed to Kirkland, as well as in the Kirkland devisees' lease to Sun, traverses the SW 1/4 of the SW 1/4 of Section 32, but does not touch the SW 1/4 of the NW 1/4 of said section. All prior deeds covering the 7.47-acre tract in the SW 1/4 of the SW 1/4 of Section 32 were placed in evidence.
Frank A. McLendon, the husband of one of the Kirkland heirs, has managed the leasing of their lands for many years. He was acting in this capacity at the time of the 1962 Sun lease and the 1967 Broadhead lease. The negotiations for the later lease were between him and Broadhead, both of whom had considerable knowledge and experience in mineral transactions.
Broadhead testified that he ascertained from an oil and gas map that the Kirkland and Lauer interests, both under the same tract, were open. He "looked at the actual description of these different tracts to check and see that they were not leased, and I found Mrs. Lauer's interest not to be leased, and also the interest of the Kirklands not to be leased, and I called Mrs. Lauer, who lives in New Orleans, and purchased her interest under this tract and came down and talked with Mr. McLendon, who represented the Kirkland interest, about purchasing their interest under this tract."
His testimony concerning his negotiations with McLendon was, "... I spoke with Mr. McLendon about this particular tract and he asked me if the interest was leased and I told him, no, I had checked the records and it was not leased. He said that they had sold leases on, I don't know how many parcels but an awful lot of parcels in the county and he didn't keep a record of them and that he didn't guarantee any of the titles to anything they leased, and I told him that this lease, as far as the records were concerned, was open, so he and  he and I disagree at this point as to what happened, but he came with me over to the Chancery Clerk's office and we both looked at this tract briefly to check and be sure there was not a lease on it, and after satisfying himself and myself both that basically without going to a lot of  on the surface it looked like it wasn't leased, and, so, he entered into a lease with me." He testified that in checking the title to the Kirkland interest he only inspected the sectional index, but stated that he examined the deed where Mrs. Lauer acquired her one-half mineral interest in the tract. He was emphatic in denying knowledge of the Sun lease, stating, "I never heard of that lease."
McLendon's testimony relating to his discussion with Broadhead was, "... when he said that township and range, then I said to him, well, now, Paul, I'll tell *98 you, said, isn't that already leased. I said, it was our intention to have leased that to Sun Oil Company because it was in the, oh, say nine hundred or thousand acres of land, minerals there, and so I told him, I said, now, it was our intention to have leased that to Sun Oil Company, and so he replied and said, Well, evidently they passed over that, you see, and I said, Paul, is it clear? and he said, it's clear. Well, I said, if you have a proposition to make, we will be glad to talk with you because we are in business to do business, you see." He further stated that the tract was known as "Hamburg Tract" and was intended to be in the lease: "We included everything we had in that location."
The chancellor found that McLendon informed Broadhead that the Kirklands had intended to lease Sun their interest in Section 32. He reasoned, however, that it would be incorrect to hold that Sun obtained the lease because of the error in the description. He concluded that Broadhead had neither actual nor constructive notice of the Sun lease and therefore the lease he obtained was valid.
The decisive issue is whether Broadhead had such notice as would require a reasonably prudent person to examine the land records to determine the status of the title. If there were such notice, he, of course, is charged with knowledge of all matters the record would have revealed concerning his lessor's title. On the other hand, if the notice was not sufficient to require an investigation of the land records, then he is an innocent purchaser for value without notice, entitled to have his lease confirmed.
An innocent purchaser for value has been defined as "one who, by an honest contract or agreement, purchases property or acquires an interest therein, without knowledge, or means of knowledge sufficient to charge him in law with knowledge, of any infirmity in the title of the seller." Black's Law Dictionary (Rev. 4th Ed. 1968).
In Smalley v. Rogers, 232 Miss. 705, 100 So.2d 118 (1958), we stated:
"Who deemed bona fide purchaser. In order to constitute one a bona fide purchaser within the rule he must have parted with value and he must have taken without notice.
"Sufficiency of notice. The notice required to deprive a purchaser or mortgagee of the status of a bona fide purchaser and to make an instrument reformable as against him may be actual or constructive. So, it has been held that, under the particular facts and circumstances, a party is not an innocent purchaser if he had notice of a prior conveyance, or if he knew of the mistake or of the other's claim before he paid the purchase price; neither is he, if he was conscious of having the means of such knowledge and did not use them as an ordinarily prudent and diligent person would have done, or if there were circumstances sufficient to put him on inquiry. If there were circumstances which, in the exercise of common reason and prudence, ought to put him on particular inquiry, he will be presumed to have made that inquiry, and will be charged with notice of every fact which that inquiry would have given him. A purchaser or mortgagee is charged with knowledge of the facts disclosed in recorded instruments affecting the premises. * * *" (232 Miss. at 712, 100 So.2d at 120-21)
Also, we stated in Beauchamp v. McLauchlin, 200 Miss. 83, 25 So.2d 771 (1946):
... Where a purchaser has knowledge of circumstances such as would put a prudent person acting in good faith on inquiry, he is chargeable with actual notice of the facts the inquiry would have disclosed. (200 Miss. at 94, 25 So.2d at 775)
The chancellor found McLendon "indicated to Mr. Broadhead something to the *99 effect that all of his interest in the southwest of the southwest, or rather in Section 32, was supposed to have been leased to Sun Oil." This indication could only have come from the testimony of McLendon who stated unequivocally it was the Kirklands' intention to lease everything they had in that location to Sun.
This notice was sufficient to require Broadhead, as a reasonable person, to inspect the Sun lease, which was of record, to determine its effect upon the title of the minerals he sought to lease. Had this been done, he could not have escaped observing that the Sun lease contained recitals designating the Quitman/Energy Road as the eastern boundary of the tract. This physical monument is common to the Sun lease of 1962 and the Lauer deed which he examined prior to obtaining the Lauer lease in 1967. These recitals spell out the exact distance in feet from the western boundary of the parcel to the road, as well as the direction southward in degrees along the road. It seems logical, due to the improbability of there being identical distances and courses upon other tracts, that this would have alerted anyone reasonably familiar with land records of the great probability of there being a mistake in the description, compelling further investigation.
Further examination would have shown not only that the Quitman/Energy Road does not traverse the SW 1/4 of the NW 1/4, but also that S.B. Kirkland, the lessors' progenitor in title, owned minerals only in the SW 1/4 of the SW 1/4 of Section 32 and none in the NW 1/4 of such section, again clearly portraying the likelihood of there being a mistake in the Sun lease.
We are of the opinion that total reliance upon the sectional index to maintain the status of an innocent purchaser in the face of direct communication that the lessors intended to lease the property to another, and the avoidance of the general index which would have led to the true status of the title, was not reasonable under the present circumstances.
We determine that Broadhead had actual notice to require an examination of the public deed records and since he neglected to do so, he is charged with what they would have revealed, a mistake in the description of Sun's lease. We decide the lower court correctly resolved the facts, but erred in its legal conclusion that Broadhead was an innocent purchaser for value. He was not and his lease should not have been confirmed.
Reversed and rendered.
GILLESPIE, C.J., and INZER, SMITH, ROBERTSON, WALKER and BROOM, JJ., concur.