95 P.3d 613

**KAʻU AGRIBUSINESS CO., INC.,**
**Plaintiff–Appellee**

v.

**HEIRS OR ASSIGNS OF AHULAU, Kahananui (w), also known as Kahananui Hilinai (w), Mahuna (w), also known as Mahunawai (w), Mahuna Ah Wa (w) and Mahuna Awa (w), Kinolau (w), also known as Kinolau Holoua (w), Hulu (k), also known as Hulu Hilinai (k), Kane**

---

Hulu (k), also known as Hulu Kane (k), Moi (k), also known as Moi Hilinai (k), Joseph H. Holoua, William K. Holoua, Kaai Kanawai, Melvin Glenn Mason, and Mathilda Noelani Batalona Mason, and all whom it may Concern, Defendants–Appellees

and

Robert K. Stender, Sr., Joseph H. Stender, Sr., William K. Au Young, Josephine L. Ferreira, Stanley S. Stender, Sr., Hermine K. Stender, and Ligaya Rasmussen, Defendants–Appellants.

No. 24420.

Supreme Court of Hawai'i.

Aug. 9, 2004.

As Amended Sept. 2, 2004.

184

---

Arnold L. Lum (Native Hawaiian Legal Corporation), Honolulu, on the briefs, for defendants-appellants.

Donald E. Scearce (Cades Schutte Fleming & Wright), Honolulu, on the briefs, for plaintiff-appellee.

MOON, C.J, LEVINSON, ACOBA, and DUFFY, JJ.; WITH NAKAYAMA, J., concurring separately.

Opinion of the Court by ACOBA, J.

We hold that the Circuit Court of the Third Circuit[1] (the court) did not err in granting the March 23, 2001 summary judgment motion of Plaintiff-Appellee Ka'u Agribusiness Co., Inc. (Plaintiff) because (1) the unnamed heirs of Moi Hilinai were not indis-

pensable to this litigation and (2) under the facts of this case, Revised Laws of Hawaii (RLH) § 4815 (1935), which precluded inheritance of patrilineal intestate property by illegitimate issue, will not be retroactively invalidated, inasmuch as (a) Plaintiff and its predecessor in title were innocent purchasers who relied upon the said statute, and (b) proof of paternity by Defendants–Appellants Robert K. Stender, Sr., Joseph H. Stender, Jr., William K. Au Young, Josephine L. Ferreira, Stanley S. Stender, Sr., Hermine K. Stender, and Ligaya Rasmussen (collectively, Stenders) was not conclusive. Accordingly, the May 15, 2001 findings of fact and conclusions of law and order granting Plaintiff's motion for summary judgment and its June 27, 2001 final judgment are affirmed.

## I. BACKGROUND

Plaintiff filed this action to quiet its title to Royal Patent Grants 2116, 2525, and 2728 at Ka'ū, Hawai'i. The Stenders appeal only as to Royal Patent Grant 2116 (the Property). The Property was originally granted to Hilinai. Among his eight heirs were: (1) Moi Hilinai; (2) Kinolau; and (3) Waiola K. Pai.[2] Moi Hilinai died in 1939, and his heirs were never judicially determined. Kinolau died in 1912, and was survived by a daughter, Kaai Kanawai, and by a son, William K. Holoua. Waiola K. Pai died in 1936, and was survived by two daughters, Mary P. Mason and Rose Aimoku.

### A. Moi Hilinai's Heirs

Under the law governing intestate succession at the time of Moi Hilinai's death in 1939, if Moi Hilinai was survived by siblings or the issue[3] of deceased siblings, but not by parents, spouse, or issue, his estate would devolve in equal shares to those siblings, with the issue of deceased siblings inheriting by right of representation. RLH § 4813 (1935). Pedigree recitals[4] in deeds evidence that

---

1. The Honorable Greg K. Nakamura presided.

2. The other eight heirs' interests ultimately vested by mesne conveyances and corporate mergers in Plaintiff. Thus, their interests are not at issue in this case.

3. "[I]ssue ... includes all the lawful lineal descendants of the ancestor." Hawai'i Revised Statutes (HRS) § 532–1 (1993).

4. A pedigree recital evidences a grantor's relationship to a deceased owner. *Apo v. Dillingham Invest. Corp.*, 57 Haw. 64, 67–68, 549 P.2d 740, 743 (1976).

title to the Property descended from Moi Hilinai to the descendants of his deceased brother and sisters.

### B. Kinolau's Heirs

#### 1.

William K. Holoua died in 1922, predeceasing his uncle Moi Hilinai. However, William K. Holoua was survived by, among other issue, a son named Joseph H. Holoua. On December 28, 1940, by a pedigree recital in a deed, Joseph H. Holoua, reciting that he was the only son of William and Lihau Holoua, conveyed his interest in the Property inherited from his granduncle Moi Hilinai, to Hutchinson Sugar Plantation Company (Hutchinson). Hutchinson was Plaintiff's predecessor in title.

Kaai Kanawai died in 1947, and her heirs were never judicially determined. In 1950, Joseph H. Holoua again conveyed to Hutchinson his share of his uncle Moi Hilinai's interest in the Property. Plaintiff asserts that this latter deed demonstrates that Kaai Kanawai's share of the undivided interest in the Property, which she inherited from her uncle Moi Hilinai, devolved solely to her nephew Joseph H. Holoua.

#### 2.

■ Joseph H. Holoua was not, however, William K. Holoua's only issue. Joseph was the only child of William K. Holoua and his wife Lihau. But, after she gave birth to Joseph, Lihau Holoua could not bear children. Lihau's cousin, Maggie Keola Kapele, came to live with William and Lihau Holoua, and they formed a punalua relationship,[5] bearing three daughters: Elizabeth Holoua, also known as Kaaipohuehue (Elizabeth); Ida Kapele, also known as Kinolau Keola (Ida); and Helen Kapele. Stenders are among the issue of Elizabeth and Ida.

Elizabeth was born in 1915 and Ida was born in 1920. Neither was denominated as legitimate; nonetheless, William K. Holoua is identified as their father on their birth certificates. However, the certificates are not signed by William K. Holoua. RLH § 4815, in effect at the time of Moi Hilinai's death, limited intestate succession by issue born out of wedlock to their mothers' estates.

### C. Waiola K. Pai's Heirs

In the order of distribution, Probate No. 3156 of Waiola K. Pai, Mary P. Mason was declared the sole heir of Waiola K. Pai. In 1944, Mary P. Mason conveyed her interest in the Property to Hutchinson, after which title vested by mesne conveyances and corporate mergers in Plaintiff.

In the record of probate proceedings, Mary P. Mason identified Rose Aimoku as being another daughter of Waiola K. Pai. Rose Aimoku died in 1938, and was survived by two issue, Victoria Hilinai and Samuel Maui, Jr.

### II. Procedural History

Plaintiff commenced this quiet title action on July 21, 2000. Stenders filed their answer on September 27, 2000, claiming undivided interests in the Property as heirs of Elizabeth and Ida. Stenders averred in their answer that statutes barring out of wedlock issue from inheriting by intestate succession through their fathers' estates violated the equal protection clauses of the United States and Hawai'i Constitutions.[6] In the alternative, Stenders asserted a right of inheritance by Hawaiian custom, as descendants of a punalua marriage. In response, Plaintiff, on March 23, 2001, filed a motion for summary judgment on Stenders' claims.

---

5. A punalua relationship is a traditional Native Hawaiian marriage among one male and two females, or two males and one female. The same sex spouses were usually related, being either siblings or cousins, although a relationship as kin was not necessary. *See* E.S. Craighill Handy and Mary Kawena Pukui, *The Polynesian Family System in Ka'u, Hawai'i* 60 (1991); Lilikala Kame'eleihiwa, *Native Land and Foreign Desire: Pahea La E Pono Ai* 391 (1992).

6. Section 1 of the 14th Amendment to the United States Constitution provides, in pertinent part: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." Similarly, Article I, Section 5 of the Hawai'i Constitution provides that "[n]o person shall be ... denied the equal protection of the laws...."

## A. Plaintiff's Motion for Summary Judgment

In its summary judgment motion, Plaintiff argued that because Elizabeth and Ida were born out of wedlock, they were barred by RLH § 4815 from inheriting by intestate succession through the estate of their father William K. Holoua. RLH § 4815 states that "[e]very illegitimate child shall be considered as an heir to his mother, and shall inherit her estate, in whole or in part, as the case may be, in like manner as if he had been born in lawful wedlock." Plaintiff also asserted that Stenders' descent from issue of a punalua marriage did not of itself establish a right to patrilineal inheritance, and further that any such inheritance rights were superseded by § 1452 of the Civil Code of 1859,[7] the predecessor of RLH § 4815.[8] In addition, Plaintiff maintained that, even if RLH § 4815 violated the Fourteenth Amendment's equal protection clause, for the reasons set forth in its supporting memorandum, the statute should not be retroactively invalidated.

In their memorandum in opposition, Stenders argued that RLH § 4815 was unconstitutional by reason of the U.S. Supreme Court's decision in *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). *Trimble* held that statutes denying the right of children born out of wedlock to inherit from their fathers by· intestate succession violate the equal protection clause of the Fourteenth Amendment. *Id.* at 777, 97 S.Ct. 1459. Stenders asserted that in *Reed v. Campbell,* 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), the Supreme Court held that *Trimble* could be applied retroactively, and thus Hawaii's proscription against partrilineal inheritance by out of wedlock issue should be retroactively invalidated. *Id.* at 856, 106 S.Ct. 2234. Stenders thus argue that they were entitled to inherit on an equal footing with their uncle Joseph L. Holoua. Stenders also urged that summary judgment

not be granted at this stage in the litigation because indispensable parties had not yet been joined. Stenders maintained that Victoria Hilinai and Samuel Maui, Jr., who had not been named as defendants in the action, were among Moi Hilinai's heirs,[9] and thus had an interest in the Property.

Plaintiff in its reply memorandum asserted that, assuming *arguendo* RLH § 4815 is unconstitutional, *Trimble* should not be applied retroactively based upon the facts in the case at bar. Plaintiff further maintained that Stenders could not "set up title in a stranger" in an effort to defeat Plaintiff's motion, by demonstrating that certain of Moi Hilinai's heirs had not been named as parties herein.

## B. Order Granting Summary Judgment

Plaintiff's summary judgment motion was granted on May 15, 2001. The court, entering findings of fact and conclusions of law, ruled that (1) all of Waiola K. Pai's share of Moi Hilinai's interest in the Property passed through her daughter, Mary P. Mason, by deed to Hutchinson; (2) it would not apply *Trimble* retroactively; and (3) the evidence establishes that title is vested in Plaintiff.

Thereafter, Stenders moved on May 25, 2001, for reconsideration of the court's finding that Waiola K. Pai's share of Moi Hilinai's interest in the Property devolved solely through her daughter Mary P. Mason. The court denied Stenders' motion for reconsideration on June 18, 2001, and entered a final judgment· "in favor of Plaintiff and against [Stenders], and all unknown persons claiming an interest in [the Property]," declaring Plaintiff to be the owner in fee simple of the Property, *i.e.,* Royal Patent Grant 2116, and Royal Patent Grants 2525 and 2728.

## III. STANDARD OF REVIEW

The standard of review to be applied by this court in reviewing an award of summary

---

7. Section 1452 of the Civil Code of 1859 limited intestate succession by out of wedlock issue to their mother's estate. Section 1452 of the Civil Code of 1859 provided as follows: "Every illegitimate child shall be considered as an heir to his mother, and shall inherit her estate, in whole or in part, as the case may be, in like manner as if he had been born in lawful wedlock."

8. This issue was not raised on appeal and therefore we do not decide it.

9. This is based upon research undertaken by Analu Josephides, Stenders' title and genealogy researcher.

judgment is the same standard applicable to the circuit court's consideration of the summary judgment motion. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22 (1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c). The inferences to be drawn from the record must be viewed in the light most favorable to the nonmoving party. *State ex rel. Bronster v. Yoshina,* 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997) (citation omitted).

## IV. POINTS ON APPEAL

Stenders raise two points on appeal: (1) the unnamed heirs of Moi Hilinai are indispensable parties under *Mossman v. Hawaiian Trust Co.,* 45 Haw. 1, 361 P.2d 374 (1961), and thus the court should not have granted summary judgment in their absence; and (2) the court erred in refusing to apply *Trimble* retroactively and in holding that Stenders did not inherit interests in the Property.

## A. Whether the Court Erred in Refusing to Join Certain Heirs of Moi Hilinai as Defendants

■ As mentioned previously, in Probate No. 3156, Mary P. Mason was declared the sole heir of Waiola K. Pai. In 1944, Mary P. Mason conveyed her interest in the Property to Hutchinson, after which title vested by mesne conveyances and corporate mergers in Plaintiff. Stenders argue that the trial court erred in granting Plaintiff summary judgment without first joining Victoria Hilinai and Samuel Maui, Jr., purported descendants of Waiola K. Pai, who are allegedly "indispensable" under *Mossman.* We disagree because: (1) *Mossman* does not apply to the facts of the case on hand; (2) Stenders' claim is contrary to prevailing law; and (3) Stenders' argument fails to raise a genuine issue of material fact.

■ Stenders rely on *Mossman,* 45 Haw. at 14–15, 361 P.2d at 381–82, for the proposition that "[o]nce an absent indispensable party is identified, summary judgment cannot be entered, and the litigation must cease until the record is perfected." This is true; however, *Mossman* is inapplicable. In *Mossman,* this court held that an absent party is "indispensable" if its presence is necessary "to carry the suit to a conclusion on the merits" for either party. *Id.* at 14, 361 P.2d at 381. This court stated that if by reason of the absence of indispensable parties, "plaintiffs could not have a decree for the specific performance they seek if they should prevail, [then] it equally is a case in which defendant cannot have judgment on the merits in case it prevails." *Id.* at 14, 361 P.2d at 382 (citing *Kendig v. Dean,* 97 U.S. 423, 24 L.Ed. 1061 (1878) and *Mallow v. Hinde,* 25 U.S. (12 Wheat.) 193, 198, 6 L.Ed. 599 (1827)).

Here, Stenders did not claim title from any descendants of Waiola K. Pai; rather, they claim title as alleged descendants of William K. Holoua. Therefore, the presence of Waiola K. Pai's descendants is not necessary "to carry the suit to a conclusion on the merits," with respect to Stenders. Even in the absence of Waiola K. Pai's descendants, Stenders could have a judgment on the merits as to their purported interest if they were to prevail, *i.e.,* through the retroactive invalidation of RLH § 4815.

■ Additionally, the Supreme Court has held that "[a] bill to quiet title may not be defeated by showing that the plaintiff's interest, otherwise sufficient to support the bill, is subject to possibly superior rights in third persons not parties to the suit." *United States v. Oregon,* 295 U.S. 1, 24, 55 S.Ct. 610, 79 L.Ed. 1267 (1935). The Supreme Court reasoned that although the defendant, State of Oregon, argued that upland proprietors may have an interest in the disputed area, "[t]he United States is entitled to relief so far as it is able to show that Oregon is without any right or title on the basis of which it would be entitled to disturb the possession of the United States." *Id.* at 25, 55 S.Ct. 610. Additionally, the Court stated that "[i]t is enough that the interest asserted by the plaintiff in possession of land is superior to that of those who are parties defendant." *Id.*

Thus, Stenders cannot argue that the bill may not be granted for the Plaintiffs simply because third parties, *i.e.*, Waiola K. Pai's descendants, may have a right to title of the property. *See Harrison v. Davis*, 22 Haw. 465, 466 (1915) (holding that evidence of the possibility of title in a stranger was insufficient to defeat title of the plaintiff in a quiet title action).

■ A party responding to a summary judgment motion must set forth facts showing that there is a genuine issue for trial. HRCP Rule 56(e). HRCP Rule 56(c) requires that the facts be material. A fact is material if proof of the fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Hunt v. Chang*, 60 Haw. 608, 618–19, 594 P.2d 118, 124 (1979). If it does not have that effect, then it would not be a material fact. *Id.* A genuine issue with respect to that fact would not foreclose the granting of a summary judgment motion. *Id.*

Proof of the existence of other descendants of Waiola K. Pai, or proof that such descendants were not bound by the 1943 judicial determination that Mary P. Mason was Waiola K. Pai's sole heir, would not: (1) refute Plaintiff's claim against Stenders that Moi Hilinai's interest descended to William K. Holoua's legitimate child, Joseph H. Holoua, from whom Plaintiff traces title; or (2) establish Stenders' defense that Moi Hilinai's interest descended not only to William K. Holoua's legitimate child, Joseph H. Holoua, but also to William K. Holoua's illegitimate children, from whom Stenders trace their descent.

**10.** The Illinois statute provided that "[a]n illegitimate child is heir of his mother and of any maternal ancestor, and of any person from whom his mother might have inherited, if living; and the lawful issue of an illegitimate person shall represent such person and take, by descent, any estate which the parent would have taken, if living. A child who was illegitimate whose parents inter-marry and who is acknowledged by the father as the father's child is legitimate." *Trimble*, 430 U.S. at 764–65, 97 S.Ct. 1459 (quoting Ill.Rev.Stat. c. 3, § 12 (1973)).

Accordingly, Stenders did not meet their burden of showing that there is a genuine issue as to any fact material to Plaintiff's claim against Stenders, or Stenders' defense to Plaintiff's claim with respect to the purported unjoined heirs of Waiola K. Pai.

### B. Whether the Court Erred by Refusing to Retroactively Invalidate RLH § 4815

■ RLH § 4815, in force at the time of Moi Hilinai's death, prohibited illegitimate children from inheriting from their fathers. The United States Supreme Court struck down a similar statute in *Trimble* for violating the equal protection clause of the Fourteenth Amendment, because it discriminated against illegitimate children and because invalidation of the statute would not conflict "in any way" with the accurate and efficient disposition of estates. 430 U.S. at 777, 97 S.Ct. 1459.

#### 1. *Trimble v. Gordon*

In *Trimble*, the paternity of the plaintiff had been judicially determined in a child support proceeding prior to father's death. *Id.* at 764, 97 S.Ct. 1459. After father died, plaintiff's mother filed a petition for, *inter alia*, the determination of father's heirs. *Id.* An Illinois probate statute prohibited illegitimate children from inheriting from their fathers. *Id.*[10] Pursuant to that statute, the probate court entered an order determining that plaintiff was not among the heirs of the father. The Illinois Supreme Court affirmed the probate court because, *inter alia*, the Illinois statute supported the state's interest in establishing an accurate and efficient method of disposing of property at death. *Id.* at 766, 97 S.Ct. 1459.[11]

**11.** In affirming, the Illinois Supreme Court also reasoned that: (1) the Illinois probate statute supported the state's interest in encouraging legitimate family relationships; and (2) the law was unobjectionable because it posed no "insurmountable barrier" preventing illegitimate children from sharing in their father's estates, inasmuch as fathers could easily include their illegitimate children as heirs through a will. *Id.* at 766–67, 97 S.Ct. 1459.

In addressing the first point, the U.S. Supreme Court concluded that the encouragement of legitimate family relationships bears "only the most attenuated relationship to the asserted goal." *Id.*

The United States Supreme Court reversed and remanded, reasoning that the Illinois statute did not "bear some rational relationship to a legitimate state purpose." *Id.* at 766, 97 S.Ct. 1459 (quoting *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 172, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972)). The statute's stated "purpose" was to "ameliorate the harsh common-law rule under which an illegitimate child was *filius nullius* and incapable of inheriting from anyone." *Id.* at 768, 97 S.Ct. 1459 (citing *In re Estate of Karas*, 61 Ill.2d 40, 329 N.E.2d 234, 236–37 (1975)). The Court explained that the establishment of an accurate and efficient method of disposing of property at death was a valid state interest; however, the "complete exclusion" of illegitimate children as their intestate fathers' heirs was unjustified. *Id.* at 770, 97 S.Ct. 1459. According to the Court, "[f]or at least some significant categories of illegitimate children of intestate men, inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws." *Id.* at 771, 97 S.Ct. 1459. Although an absolute bar was inappropriate, "[t]he more serious problems of proving paternity might justify *a more demanding standard* for illegitimate children claiming under their fathers' estates than that required either for illegitimate children claiming under their mothers' estates or for legitimate children generally." *Id.* at 770, 97 S.Ct. 1459 (emphasis added). The Court explained that this "more demanding standard" would be satisfied "where there is a prior adjudication or formal acknowledgment of paternity." *Id.* at 773 n. 14, 97 S.Ct. 1459.

The Court concluded that since the plaintiff's paternity had been previously judicially determined, "the State's interest in the accurate and efficient disposition of property at death would not be compromised *in any way. ...*" *Id.* at 772–73, 97 S.Ct. 1459 (emphasis added).

### 2. *Reed v. Campbell*

Subsequently, in *Reed*, the Supreme Court held that where the state interest in the orderly and just administration of estates would not be adversely impacted in any way,[12] the interest in "avoiding unjustified discrimination against children born out of wedlock ... should [be] ... given controlling effect." *Reed*, 476 U.S. at 856, 106 S.Ct. 2234. In *Reed*, the plaintiff notified both the administratrix and probate court of her claim to her father's estate while the estate was still open. *Id.* at 854, 106 S.Ct. 2234. Thereafter, plaintiff filed a formal complaint and a jury found that she was the daughter of the decedent, but that she was illegitimate. *Id.* The probate court denied her claim because a Texas probate statute[13] prohibited illegitimate children from inheriting from intestate fathers. *Id.* The Texas Court of Appeals affirmed on the grounds that (1) plaintiff's father died before the date *Trimble* was decided and (2) her claim was filed after *Trimble*. *Reed*, 476 U.S. at 853, 106 S.Ct. 2234.

The U.S. Supreme Court reversed and remanded, reasoning that although the Court has "upheld statutory provisions that have an

---

at 768, 97 S.Ct. 1459. According to the Court, "Penalizing children as a means of influencing their parents seems inconsistent with the desire . . to make the intestate succession law more just to illegitimate children," and "the difference in the rights of illegitimate children in the estates of their mothers and their fathers appears to be unrelated to the purpose of promoting family relationships." *Id.* at 768 n. 13, 97 S.Ct. 1459.

In response to the second point, the Supreme Court opined that the notion that there was no "insurmountable barrier" preventing illegitimate children from sharing in their fathers' estates, confused the issue, inasmuch as had "the decedent ... written a will devising property to his illegitimate child, the case no longer would involve intestate succession law at all." *Id.* at 774, 97 S.Ct. 1459.

**12.** *See Reed*, 476 U.S. at 856, 106 S.Ct. 2234 ("The state interest in the orderly administration of [father's] estate would have been served equally well regardless of how the merits of the claim were resolved.")

**13.** The Texas statute provided as follows: "For the purpose of inheritance to, through, and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit *from his mother and from his maternal kindred*, both descendants, ascendants, and collaterals in all degrees, and they may inherit from him." *Id.* at 853, 106 S.Ct. 2234 (quoting Tex. Prob.Code Ann. § 38(a) (Vernon 1980)) (emphasis in original).

evident and substantial relation to the [state] interest in providing for the orderly and just distribution of a decedent's property at death," *id.* at 855, 106 S.Ct. 2234 (citing *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978)), "neither the date of [the father's] death nor the date the claim was filed had *any impact* on the relevant state interest in [the] orderly administration [of estates]," *id.* at 856, 106 S.Ct. 2234 (emphasis added). However, the Court cautioned that "[a]fter an estate has been *finally distributed,* the interest in finality may provide an additional, valid justification for barring the belated assertion of claims...." *Id.* at 855, 106 S.Ct. 2234 (emphasis added).

Stenders argue that RLH § 4815 should be retroactively invalidated. However, *Trimble* and *Reed* both illustrate that the issue is not one of absolute "retroactivity." Instead, the issue is whether there is a valid state interest at stake that is compromised by the recognition of the inheritance rights of illegitimate descendants. *See Trimble,* 430 U.S. at 767, 97 S.Ct. 1459; *Reed,* 476 U.S. at 854–55, 106 S.Ct. 2234. The "accurate and efficient disposition," *Trimble,* 430 U.S. at 772, 97 S.Ct. 1459, and "orderly and just distribution," *Reed,* 476 U.S. at 855, 106 S.Ct. 2234, of estates are obviously legitimate state interests, which are served by (1) establishing standards for paternity, *Trimble,* 430 U.S. at 770–71, 97 S.Ct. 1459; and (2) preserving finality of distribution, *Reed,* 476 U.S. at 855, 106 S.Ct. 2234.

Here, Moi Hilinai's estate was not probated. Thus, concerns of finality are not at issue. However, *Trimble* and *Reed* are distinguishable from the instant facts in two ways. First, in both Supreme Court cases the legitimate heirs had not transferred their interests to innocent purchasers. In the instant case, Joseph K. Holoua transferred the Property to Hutchinson thirty-seven years before *Trimble* was decided. Second, in both of these cases, paternity had been judicially determined. *See id.* at 854, 106 S.Ct. 2234; *Trimble,* 430 U.S. at 764, 97 S.Ct. 1459. Here, paternity is evidenced only by un-

signed birth certificates. Consequently, we consider the law of other jurisdictions that have addressed similar circumstances. *See Mitchell v. Hardwick,* 297 S.C. 48, 374 S.E.2d 681 (1988); *Williamson v. Gane,* 176 W.Va. 443, 345 S.E.2d 318 (1986); *Marshall v. Marshall,* 670 S.W.2d 213 (Tenn.1984).[14]

### 3. *Mitchell v. Hardwick*

While *Trimble* obviously applies prospectively, "[a]fter [the] application of *Trimble* to invalidate their own similar statutes, other state courts addressing the prospective/retroactive question have generally limited the retrospective reach of the statutory invalidation." *Williamson,* 345 S.E.2d at 320. In *Mitchell,* plaintiff's paternity was evidenced by, *inter alia,* a deed in which the decedent conveyed property to plaintiff and expressly identified plaintiff as his son. 374 S.E.2d at 682. Plaintiff petitioned the lower court to partition the estate. *Id.* The court held that plaintiff could not inherit from his father's estate because his father had died prior to the date *Trimble* was decided, pursuant to precedent in that state. *Mitchell,* 374 S.E.2d at 682; *see Wilson v. Jones,* 281 S.C. 230, 314 S.E.2d 341 (1984) (holding that *Trimble* should be given prospective effect only). The Supreme Court of South Carolina reversed. *Mitchell,* 374 S.E.2d at 683. In its discussion, that court outlined the major arguments against applying *Trimble* retroactively: (1) the denial of rights of those who detrimentally relied upon the old law; (2) the difficulty of proving paternity; and (3) the disruption of the probate process. *Id.* at 682–83.

However, the South Carolina Supreme Court held that "limited retroactive application" of *Trimble,* was appropriate when (1) an innocent purchaser will not be adversely affected because of its detrimental reliance on the old rule, (2) the paternity of the child has been conclusively established either by court order or decree issued before the father's death or by an instrument signed by the father acknowledging paternity, and (3)

---

**14.** There are a few jurisdictions that refuse to retroactively apply *Trimble* altogether. *See Pendleton v. Pendleton,* 560 S.W.2d 538 (Ky.1978); *Frakes v. Hunt,* 266 Ark. 171, 583 S.W.2d 497, *cert. denied,* 444 U.S. 942, 100 S.Ct. 297, 62 L.Ed.2d 309 (1979).

the estate administration is subject to further resolution.[15] *Id.* at 682–83.

The first element, regarding detrimental reliance, is in consonance with the rationale in *Trimble,* since it furthers the state's legitimate interest in preserving "the dependability of titles to property passing under intestacy laws." 430 U.S. at 771, 97 S.Ct. 1459; *see also id.* at 767 n. 12, 97 S.Ct. 1459 (stating that "judicial deference is appropriate when the challenged statute involves the substantial state interest in providing for the stability of … land titles") (ellipsis in original) (citations & internal quotation marks omitted); *Tehan v. United States,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) (considering whether a rule change should be given retroactive effect, and concluding that the court must consider the extent of reliance which has been placed on the old rule), *Marshall,* 670 S.W.2d at 215 (explaining "retroactive application of a decision overruling an earlier decision ordinarily is denied only if such an application would work a hardship upon those who have justifiably relied upon the old precedent" (citations omitted)); *Collier v. Shell Oil Co.,* 534 So.2d 1015, 1018 (Miss.1988) (finding that justifiable reliance concerns "the state's interest in the stability of land titles"); Traynor, *Quo Vadis Prospective Overruling: A Question of Judicial Responsibility,* 28 Hastings L.J. 533 (1977) (concluding that prospective application of an overruling decision should be limited to instances where a hardship on a party who has relied on the old rule outweighs the hardship on the party denied the benefit of the new rule).

*Trimble's* rationale is also reflected in the *Mitchell* rule's second element, which, with respect to proof of paternity, furthers the valid state interest in the "accurate and efficient disposition of property at death." *Trimble,* 430 U.S. at 772, 97 S.Ct. 1459. As the Court said, "[t]he … serious problems of proving paternity might justify a more demanding standard for illegitimate children … than that required either for illegitimate children claiming under their mothers' estates or for legitimate children generally." *Id.* at 770, 97 S.Ct. 1459; *see also id.* at 771, 97 S.Ct. 1459 ("Our previous decisions demonstrate a sensitivity to the lurking problems with respect to proof of paternity …."); *id.* at 773, 97 S.Ct. 1459 ("Evidence of paternity may take a variety of forms, some creating more significant problems of inaccuracy and inefficiency than others."); *Marshall,* 670 S.W.2d at 214 ("[W]e think that a child born out of wedlock must meet a stricter or higher standard of proof of paternity than is required for a child born within wedlock….")

Finally, the *Mitchell* rule's third element, considering whether the estate is subject to further administration, addresses the state interest in "the orderly and just distribution of a decedent's property at death." *Reed,* 476 U.S. at 855, 106 S.Ct. 2234. As discussed above, in *Reed,* the Court explained that, "[a]fter an estate has been *finally distributed,* the interest in finality may provide an additional, valid justification for barring belated assertion of claims." *Id.* (emphasis added).

### 4. *Williamson v. Gane*

Alternatively, Stenders urge that the standard announced in *Williamson* should be applied. In *Williamson,* a man died intestate, leaving five legitimate children and three purported illegitimate children. *Williamson,* 345 S.E.2d at 319. One of the legitimate children filed an action to partition her father's real property, and the illegitimate children moved to intervene. *Id.* The trial court denied the motion because it concluded that *Trimble* should not be applied retroactively. *Id.* On appeal, the Supreme Court of Appeals for West Virginia reversed and remanded, holding that *Trimble* could be fully applied retroactively when (1) there has been no justifiable and detrimental reliance upon the law invalidated therein, (2) the sub-

---

15. By "further administration," the *Mitchell* court was concerned with whether or not the decedent's estate had been probated. If it had, and the South Carolina Supreme Court retroactively invalidated the probate statute, a "disruption of the orderly probate process" would occur.

374 S.E.2d at 682; *see also id.* at 683 (discussing of the facts on hand, the *Mitchell* court stated that "the estate has never been formally probated and, therefore, the disruption of the probate process would not occur in this situation").

ject property has not been transferred to an innocent purchaser for value, *or* (3) the estate is subject to further administration. *Id.* at 322.

The rule announced in *Mitchell*[16] is more exacting than the *Williamson* test, because all of the elements to the *Mitchell* rule must be satisfied, 374 S.E.2d at 683; whereas the *Williamson* rule may be satisfied by meeting any one of the elements, 345 S.E.2d at 322. As the dissent in *Williamson* noted, "[t]he exception for justifiable reliance and transfer to an innocent purchaser go far to protect the innocent purchaser, but the last phrase of the syllabus, allowing a retroactive effect where the estate is subject to further resolution, has the capability to cause much mischief." *Williamson*, 345 S.E.2d at 322 (Brotherton, J., dissenting). According to the dissent, "[t]he free transferability of land in our society is necessary for growth and economic prosperity. Full retroactive effect of [*Trimble* ] would leave land titles in a blur. Frustration over the uncertainties of titles could hinder land transfers and promote economic stagnation." *Id.*

We conclude that the limited retroactive application of *Trimble* as adopted by *Mitchell* is appropriate, because it addresses those concerns raised by the Court in *Trimble* and *Reed.* In sum, the *Mitchell* test recognizes inheritance rights of "some significant categories of illegitimate children of intestate men ... without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws," *Trimble*, 430 U.S. at 771, 97 S.Ct. 1459, and therefore it preserves the valid state interests at issue, *i.e.,* the "accurate and efficient disposition," *id.* at 777, 97 S.Ct. 1459, and "orderly and just distribution" of estates, *Reed*, 476 U.S. at 855, 106 S.Ct. 2234. Furthermore, its requirements provide "a more demanding standard," in the area of proof of paternity, as the Court advised in *Trimble*, 430 U.S. at 770, 97 S.Ct. 1459; *see also Pinckney v. Warren*, 344 S.C. 382, 544 S.E.2d 620, 626 (2001) (discussing the development of the *Mitchell* standard, and explaining that its strict requirements "promote stability and prevent both fraudulent challenges to, and fraudulent assertions of, paternity"). Accordingly, we adopt the *Mitchell* standard in our analysis below.

## V. Unconstitutionality of RLH § 4815

In *Trimble*, the issue was whether the Illinois statute had a "rational relationship to a legitimate state purpose." 430 U.S. at 766, 97 S.Ct. 1459 (quoting *Weber*, 406 U.S. at 172, 92 S.Ct. 1400). The statute, according to the Illinois Supreme Court, was intended to "ameliorate the harsh common-law rule under which an illegitimate child was *filius nullius* and incapable of inheriting from anyone." *Id.* at 768, 97 S.Ct. 1459 (citing *In re Estate of Karas*, 329 N.E.2d at 236–37). The Illinois statute "ameliorate[d]" the "harsh common-law rule" by allowing an illegitimate child to inherit from her father when her "parents inter-marry and [when she] is acknowledged by the father as the father's child." *Id.* at 764, 97 S.Ct. 1459 (quoting Ill.Rev.Stat. c. 3, § 12). As previously stated, this alleged "legitimate state purpose" did not pass constitutional muster.

■ RLH § 4815 has no legislative history and has not been judicially interpreted. Unlike the Illinois statute, RLH § 4815 does not contain provisions for allowing the possibility of inheritance, *i.e.,* as seen in the Illinois statute's provision on inter-marriage and paternal acknowledgement. However, on its face, RLH § 4815 is substantially similar to the Illinois statute invalidated in *Trimble*, inasmuch as it permits an illegitimate child to inherit from the intestate estate of the mother, but not from that of the father. Accordingly, we hold that RLH § 4815 is constitutionally invalid for offending the "state interest in avoiding unjustified discrimination against children born out of wedlock." *Reed*, 476 U.S. at 856, 106 S.Ct. 2234 (citing *Mathews v. Lucas*, 427 U.S. 495, 505, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976)).

However, we still must determine whether limited retroactive application of *Trimble* is proper in this case. For the reasons enu-

---

**16.** The *Mitchell* rule was a modification of the test set forth in *Williamson. Mitchell,* 374 S.E.2d at 682.

merated *supra*, we apply the test announced in *Mitchell*. *See* 374 S.E.2d at 683.

## VI. Application of *Mitchell* Test

### A. Whether Hutchinson was an innocent purchaser who detrimentally relied on RLH § 4815

#### 1. Innocent Purchaser

■ An innocent purchaser is "one who, by an honest contract or agreement, purchases property or acquires an interest therein, without knowledge, or means of knowledge sufficient to charge him in law with knowledge, of any infirmity in the title of the seller." *Pelosi v. Wailea Ranch Estates*, 91 Hawai'i 478, 489, 985 P.2d 1045, 1056 (1999) (quoting *Sun Oil Co. v. Broadhead*, 323 So.2d 95, 98 (Miss.1975)).[17]

In 1940, Joseph H. Holoua's deed conveyed to Hutchinson "all right, title and interest, being not less than an undivided one-sixth (1/6) interest" in Moi Hilinai's purported 27/160ths interest in the Property. On the deed, Joseph H. Holoua recited that he was the only child of Kanuu Holoua (a.k.a. William K. Holoua) and Lihau Holoua. As previously mentioned, in 1950, Joseph H. Holoua again conveyed to Hutchinson all of his "right, title and interest, ... the interest intended to be hereby conveyed being not less than an undivided 1/6th interest."[18] Stenders contend that Hutchinson was not an innocent purchaser because the deeds are ambiguous with regard to the quantum of the interest conveyed, and that Plaintiff should

have known that Joseph H. Holoua's title was defective or broken. This argument fails to demonstrate that Hutchinson, Plaintiff's predecessor in title, had "knowledge, or means of knowledge sufficient to charge him in law with knowledge, of any infirmity in the title of [Joseph H. Holoua]." *Pelosi*, 91 Hawai'i at 489, 985 P.2d at 1056 (quoting *Sun Oil*, 323 So.2d at 98). *Collier* provides further guidance. *See* 534 So.2d 1015.

In *Collier*, decided two years before *Trimble* was decided, the legitimate heirs of father conveyed rights to oil, gas, and minerals to an oil company. *Id.* at 1016. The oil company then assigned an overriding royalty to a second oil company. *Id.* After *Trimble* was issued, the illegitimate heirs of father filed an action to establish their right to inherit. *Id.* The oil companies moved for summary judgment, which the chancery court granted. *Id.* at 1017. The Supreme Court of Mississippi affirmed, holding that purchasers from legitimate children to whom title had descended and in whom title had vested at the moment of the decedent's death, were bona fide purchasers for value against whom *Trimble* could not be applied retroactively. *Id.* at 1015. The *Collier* court reasoned that, "[a]t the time they [purchased,] neither land records nor accessible law gave [the purchasers] notice that [decedent's] illegitimate heirs had rights in his estate." *Id.* at 1018.

Likewise, at the time of Joseph H. Holoua's conveyances to Hutchinson, neither "land records nor accessible law" gave Hutchinson notice that William K. Holoua's

---

**17.** The concept of an "innocent purchaser" is related to the concept of justifiable reliance. *See Collier*, 534 So.2d at 1018–19 (Reliance is justifiable where a purchaser is "without notice of any defect in [the property]," and has no reasonable means of finding such defect); *Frakes*, 266 Ark. 171, 583 S.W.2d 497 (explaining that had decedent made inquiry as to the law of descent and distribution before his death, his lawyer could have informed him with confidence that illegitimate children would not take under law of descent and distribution).

**18.** Plaintiff asserts that this second conveyance transferred the interest of Kaai Kanawai in the Property to Hutchinson. We agree. *See Ku v. Dai Fukuji Soto Mission*, 53 Haw. 245, 250, 492 P.2d 651, 654 (1971) (holding that conveyance of all of grantor's interest, followed by reference to grantor's source of title, passes title to all of

grantor's interest acquired from all sources, and is not limited to grantor's interest acquired from the referenced source); *cf. Costello v. Graham*, 9 Ariz. 257, 80 P. 336 (1905) (finding that deed of all right, title and interest, "being an undivided one-half interest," is conveyance of grantor's whole interest; specifically stated interest not to be construed as limiting grant of all interest or as excepting from conveyance any interest owned by grantor); *McLennan v. McDonnell*, 78 Cal. 273, 20 P. 566 (1889) (stating that deed of all right, title and interest not limited by phrase "being a one-half undivided interest"); *Murphy v. Murphy*, 132 N.C. 360, 43 S.E. 922, 922 (1903) (concluding that deed of all of grantor's interest, followed by phrase, "being one undivided sixth interest," conveyed grantor's entire interest as a matter of law).

illegitimate children had any interest in his estate. Obviously, Hutchinson did not have notice that RLH § 4815 violated the U.S. or Hawai'i Constitutions' equal protection clauses, or that a determination of the invalidity of RLH § 4815 in this action would be given retroactive effect to 1939, and thereby revest Moi Hilinai's interest not only in William K. Holoua's legitimate child, Joseph H. Holoua, from whom Plaintiff traces title, but also in William K. Holoua's alleged illegitimate children, from whom Stenders descended. Accordingly, Hutchinson, and subsequently Plaintiff, were innocent purchasers.

### 2. Detrimental reliance upon RLH § 4815

Stenders argue that "there is no clear evidence of record which would support a finding that Hutchinson justifiably and detrimentally relied upon RLH § 4815." Additionally, they insist that Hutchinson could not have justifiably relied upon Joseph H. Holoua's representations that he was his parents' only child, made in the 1940 and 1950 deeds.

Reliance is detrimental where the purchaser has changed his position, evidenced by consideration paid as well as improvements made to the property. *See Collier,* 534 So.2d at 1018–19 (purchaser detrimentally relied upon statute similar to RLH § 4815 where it "struck their deal and paid their money" and "engaged in ten years of successful drilling operations"); *see also Williamson,* 345 S.E.2d at 321 (detrimental reliance shown where "substantial improvements" are made to property); *cf. Marshall v. Marshall,* 670 S.W.2d 213, 215 (Tenn.1984) (no reliance where individuals have not acted, but merely assert that they have passively acquired rights as the heirs at law of an intestate property owner).

In this case, Hutchinson was an innocent purchaser that paid consideration for the Property. Hutchinson also apparently relied upon RLH § 4815. It therefore could justifiably rely on Joseph H. Holoua's representation that he was the only child.[19] If RLH § 4815 were to be retroactively invalidated, Hutchinson's reliance would be to its detriment. "[N]o equity can be any stronger than that of a purchaser who has put himself in peril by purchasing a title for a valuable consideration without notice of any defect in it." *Collier,* 534 So.2d at 1018 (quoting *Giesbrecht v. Smith,* 397 So.2d 73, 77 (Miss. 1981)). Accordingly, Hutchinson was an innocent purchaser that detrimentally relied on RLH § 4815.

### B. Paternity & further administration of the estate

Stenders argue that the paternity of William K. Holoua's other issue were conclusively identified through Elizabeth and Ida's birth certificates. As discussed above, the *Mitchell* standard requires that "the paternity of the child [must be] conclusively established either by court order or decree issued prior to the death of the father or by an instrument signed by the father acknowledging paternity." 374 S.E.2d at 683.[20]

Under this test, the Stenders' claim must fail for want of a court order establishing paternity or of a signed instrument. Indeed, under the *Mitchell* standard, the mere presence of the alleged illegitimate child's father's name on the child's birth certificate is insufficient for proof of paternity. *See Freeman v. Freeman,* 323 S.C. 95, 473 S.E.2d 467, 472–73 n. 4 (1996) (holding, under *Mitchell,* illegitimate child could not inherit because "[a]lthough [the father's] name is on the birth certificate, his signature is not"). As previously noted, the signature of William K. Holoua, *i.e.,* the alleged father of Eliza-

---

**19.** *Mitchell* stated that *Trimble* could be applied retroactively when, *inter alia,* there has been no justifiable and detrimental reliance upon a law. Joseph H. Holoua's 1940 Deed recitation is neither a "law" or old rule, nor was it offered as evidence of Hutchinson's reliance upon RLH § 4815. Similarly, Joseph H. Holoua's 1950 Deed to Hutchinson does not support Plaintiff's claim for justifiable reliance, because the deed is not "law."

**20.** As discussed above, similar measures were mentioned with approval by the Supreme Court in *Trimble,* 430 U.S. at 773 n. 14, 97 S.Ct. 1459 ("Evidence of paternity may take a variety of forms ... for example, where there is a prior adjudication or formal acknowledgment of paternity").

beth and Ida, from whom Stenders trace their descent, is not on their birth certificates.

Alternatively, regarding this element, the court in *Marshall* held that *Trimble* could be applied retroactively when paternity is established by "clear and convincing proof" after a father's death. *Marshall,* 670 S.W.2d at 214 (quoting *Allen v. Harvey,* 568 S.W.2d 829, 835 (Tenn.1978)). "Clear and convincing does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *Chester v. Sec'y of Health & Human Servs.,* 808 F.2d 473, 479 (6th Cir.1987) (providing a standard of proof to determine the inheritance rights of an illegitimate child whose father died intestate); *see also Child Support Enforcement Agency, State of Hawai'i v. Doe,* 99 Hawai'i 138, 155, 53 P.3d 277, 294 (App.2002) (explaining that clear and convincing proof requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt and will be shown where the truth of the facts asserted is highly probable).

Assuming, *arguendo,* that clear and convincing proof of paternity is required, the birth certificate alone would be insufficient. *See Johnson v. Branson,* 228 Va. 65, 319 S.E.2d 735, 737 (1984) ("We hold that the mere listing of [a parent's] name on the ... birth certificate is insufficient to prove paternity under our statute requiring such proof to be made by clear and convincing evidence."); *see also Burnett v. Camden,* 253 Ind. 354, 254 N.E.2d 199, 201 (1970) (requirement that paternity be established by law not satisfied by naming of decedent as father on claimant's birth certificate).

As noted above, Moi Hilinai's estate was never probated; thus, the third condition to the *Mitchell* test is satisfied, because his estate is "subject to further resolution." *Mitchell,* 374 S.E.2d at 683. Nevertheless, we hold that under the facts of this case, the court below did not err in refusing to retroactively invalidate RLH § 4815 and in holding that Stenders did not inherit interests in the Property, because: (1) Plaintiff was an innocent purchaser that detrimentally relied on the statute; and (2) Stenders' proof of paternity was inconclusive.

## VII. CONCLUSION

For the foregoing reasons, the court's May 15, 2001 findings of fact, conclusions of law, and order granting Plaintiff's motion for summary judgment against Stenders and its June 27, 2001 final judgment are affirmed.

Concurring Opinion by NAKAYAMA, J.

I concur in the result only.